Edward D. OPPENHEIMER, Robert A. Burger and St. Paul Fire & Marine Insurance Company, Plaintiffs,

v.

MORTON HOTEL CORPORATION, a Michigan corporation, Defendant.

Civ. A. No. 3523.

United States District Court
W. D. Michigan, S. D.

Oct. 31, 1962.

**610**

Allaben & Massie, Grand Rapids, Mich., Harold R. Zeamans, New York City; F. Roland Allaben, Grand Rapids, Mich., of counsel, for plaintiffs Oppenheimer and Burger.

Renihan & Goolian, Grand Rapids, Mich., Paul S. Goolian, Grand Rapids, Mich., of counsel, for plaintiff St. Paul Fire & Marine Ins. Co.

James A. Markle, Detroit, Mich., Varnum, Riddering, Wierengo & Christenson, Grand Rapids, Mich., F. William Hutchinson, Grand Rapids, Mich., of counsel, for defendant.

FOX, District Judge.

The court in this case called a pre-trial conference immediately before the trial opened on October 1, 1962. The purpose of the pre-trial was to discuss the issues involved in the case and to attempt to expedite the disposition of the action under Rule 16, subd. 6, of the Federal Rules of Civil Procedure.

The court was moved to do so after a careful study of the pleadings, depositions and exhibits of the parties led the court to conclude that there was no true question of fact. As a result of this discussion, the court suggested that arguments be made in the form of a motion for summary judgment to determine whether there was any need to present evidence of the facts to a jury for deliberation.

The court, pressed for time, did not discover the absence of a genuine issue of fact in time for the proper parties to file a motion for summary judgment under Rule 56. However, the court is convinced

that it is the duty of the court at any time in the progression of the trial, be it on the first day of the trial, or the last day, to suggest proper action that will aid in the disposition of the suit.

On November 9, 1957, plaintiff Robert A. Burger, a diamond salesman, registered in the defendant Morton Hotel, in Grand Rapids, Michigan. Plaintiff Burger was making a pre-Christmas selling trip representing plaintiff Edward D. Oppenheimer.

After registering, plaintiff Burger left the Hotel and made some calls on jewelry merchants in Grand Rapids. He returned to the Hotel, went to the desk, and deposited a brief case with the clerk. The clerk handed him a Safety Deposit Envelope.[1] Mr. Burger signed his name in the appropriate place and the clerk attached the "A" form to the brief case and gave the "B" form to Mr. Burger.

The hotel clerk did not inquire as to the value of the brief case, or as to its contents. The plaintiff Burger did not comment upon the value of the brief case, or its contents, nor did he fill in the appropriate space on the deposit ticket as to value.

The next morning Mr. Burger attempted to check out of the Hotel. It was then discovered that the brief case was missing. No trace of the brief case has since been discovered.

An action was therefore filed in this court by plaintiffs Oppenheimer, Burger and St. Paul Fire & Marine Insurance Company against the Morton Hotel Corporation, in Grand Rapids, Michigan, for a loss of diamonds which were contained in the brief case deposited for safekeeping at the defendant Hotel. These diamonds were alleged to have a value of $50,000.

The decision of the Court on the motion turns on an interpretation of the Michigan Innkeeper's Liability Act. M. S.A., Sections 18.311 and 18.312, CL '48, §§ 427.101 and 427.102.[2]

1. "S A F E T Y D E P O S I T
E N V E L O P E
"Printed in U.S.A. John Willy, Inc., Chicago Form 190
"A Check
"THIS CHECK TO BE SIGNED WHEN PACKAGE IS DEPOSITED.
"In accepting this envelope and contents for safekeeping, we assume no liability other than that provided for in the Inn Keeper's Act of this state, which has limited our liability so that in no event can we be liable for more than the amount specified in said Act. The employee accepting this envelope has no authority to accept same if the contents are valued at more than the amount specified in said Act.
"The contents of this envelope do not exceed a value of $————.
"Signature of Depositor ——————
"Received by —— Date ———— 19—.
"DO NOT DETACH UNTIL PACKAGE IS CALLED FOR
"Delivery only to Owner after Signature on Duplicate check "B" is witnessed and compared.
"B Depositor's
Check
"This check to be signed only when package is called for and in the presence of the clerk on duty.

"Signator of Depositor ——————
"Delivered by —— Date ———— 19—.
"Package will be delivered only to party originally depositing it, whose signature appears on duplicate check on package."

2. § 18.311: "Liability of innkeeper; loss or injury to ordinary personalty, limits. Sec. 1. The liability of the keeper of any inn, whether individual, partnership or corporation, for loss of or injury to personal property of his guest, shall be that of a depository for hire; Provided, however, That in no case shall such liability exceed the sum of 250 dollars; and in case of the loss of a trunk or chest, and its contents, it shall not exceed the sum of 150 dollars; in case of the loss of a valise, portmanteau, grip, telescope or dress suit case, and contents, it shall not exceed the sum of 50 dollars; and in case of the loss of a box, bundle or package, and contents, it shall not exceed the sum of 10 dollars: And provided further, That nothing in this act shall prohibit an innkeeper from assuming a greater liability than the sum of 250 dollars for the personal effects of his guest: Provided, Said undertaking and agreement shall be in writing, stating the kind of personal property received and the value thereof, the kind and extent of the liability of said innkeeper, which

As it relates to this case, Section 18.311 says three things: first, that the innkeeper shall be considered a depository for hire; secondly, that in no case shall the liability of an innkeeper exceed $50 in the case of a loss of a *valise and its contents;* and thirdly, that the innkeeper may assume a greater liability for the loss of a *valise and its contents* than the statute sets out, provided that he enters into an agreement in writing, stating the kind of property and the value of the property. This agreement is to be signed by the innkeeper and the guest alike. This is a contract for bailment.

This section does not say that a valise and its contents may not have a greater value than $50. It may be true that a valise and its contents may have a greater value than $50, and it obviously did in this case.

The section explicitly says: "(T)hat in *no case* shall *such liability* exceed the sum of two hundred fifty dollars; \* \* \* in case of the loss of a valise, portmanteau, grip, telescope or dress suit case, *and contents, it shall not exceed* the sum of fifty dollars; \* \* \*." (Emphasis added.)

This section provides that nothing in the Act shall prohibit the innkeeper from assuming a greater liability. The statute requires that any undertaking for the assumption of greater liability be in writing, state the kind of personal property received, the value thereof, the kind and extent of the liability of said innkeeper, and further requires that the agreement shall be signed by the guest and the innkeeper or his clerk.

Section 18.311 says nothing about a duty to inquire or a duty to disclose before entering into this extension of liability. Section 18.312 provides the procedure by which certain goods are to be deposited with the hotel.

Section 18.312 says in effect that no innkeeper who constantly has in his inn a metal safe or suitable vault in good order, and fit for the custody of diamonds, and who complies with other requirements set out in Section 18.312 shall be liable for the loss of or injury to any such property (precious stones) belonging to any guest, *unless the guest has offered to deliver the same to such innkeeper* for custody in such metal safe or vault, *and* such innkeeper has refused or

said agreement shall be signed by said guests, and said innkeeper or his clerk: And provided further, That nothing contained in this section shall preclude any remedy now existing for the enforcement of the hotel keeper's or innkeeper's lien. [C.L. '48, § 427.101; C.L. '29, § 8803; C.L. '15, § 6929.]"

§ 18.312: "Same; money, jewelry, valuable papers. Sec. 2. No innkeeper, whether individual, partnership or corporation, who constantly has in his inn a metal safe or suitable vault in good order, and fit for the custody of money, bank notes, jewery, articles of gold and silver manufacture, precious stones, personal ornaments, railroad mileage books or tickets, negotiable or valuable papers and bullion, and who keeps on the doors of the sleeping rooms used by his guests suitable locks and bolts, and on the transoms and windows of said rooms suitable fastenings, and who keeps a copy of this section printed in distinct type constantly and conspicuously suspended in the office and in the ladies'

parlor or sitting room, bar-room, washroom and in 5 other conspicuous places in said inn, or in not less then 10 conspicuous places in all in said inn, shall be liable for the loss of or injury to any such property belonging to any guest, unless such guest has offered to deliver the same to such innkeeper for custody in such metal safe or vault, and such innkeeper has refused or omitted to take it and deposit it in such safe or vault for custody, and to give such guest a receipt therefor: Provided, however, That the keeper of any inn shall not be obliged to receive from any 1 guest for deposit in such safe or vault any property hereinbefore described exceeding a total value of 250 dollars, except under special agreement as hereinbefore provided, and shall not be liable for any excess of such property whether received or not, but every innkeeper shall be liable for any loss of the above enumerated articles of a guest in his inn, caused by the theft or negligence of the innkeeper or any of his servants. [C.L.1948, § 427.102; C.L.1929, § 8804; C.L.1915, § 6930.]"

omitted to take it and deposit it in such safe or vault for custody, *and* has failed to give such guest a receipt therefor.

■ The manifest meaning of Section 18.312 is that where goods within the enumerated categories set out in 18.312 are involved, *the guest must offer to deliver the same to the innkeeper for custody in the hotel's safe,* before the innkeeper shall be liable in excess of any amount set out in Section 18.311.

The proviso in Section 18.312 supports this meaning. It begins by saying, "That the keeper of any inn shall not be obliged to receive from any 1 guest for deposit in such safe or vault any property hereinbefore described [diamonds] exceeding a total value of 250 dollars, except under special agreement as hereinbefore provided [section 18.311] and shall not be liable for any excess of such property whether received or not * * *."

■ The burden of disclosure is, therefore, clearly placed by the language of the statute upon the guest, in order to create a contract of bailment in relation to those specific items of value which are set forth in Section 18.312.

This requirement of Section 18.312, in the judgment of the legislature, was reasonable in connection with the provisions of Section 18.311, in allowing an innkeeper to assume greater liability for a valise and its contents by entering into a written agreement with its guest.

In this case, what was offered was a valise. To place the duty of inquiry upon the Hotel is to ignore the clear language of the statute.

■ Much reliance is placed by the plaintiffs in this case upon the last part of Section 18.312, specifically the language: " * * * but every innkeeper shall be liable for any loss of the above enumerated articles of a guest in his inn, caused by the theft or negligence of the innkeeper or any of his servants."

The proviso from which this language is taken must be read as a part of the whole of Section 18.312. This phrase and the proviso come into play under the specific language of the statute *only* when the guest has offered to deliver diamonds or the valuables to the innkeeper for custody *and* the innkeeper has refused or omitted to take it and deposit it in the hotel safe, and has refused to give the guest a receipt for such valuables.

Once these events have taken place, and the diamonds or valuables are subsequently lost, the burden is then placed on the shoulders of the hotel to show that the loss was not caused by theft or negligence of the innkeeper or its servants.

From the beginning of Section 18.311 to the end of Section 18.312, the exemption from liability in excess of $250 is *absolute* where the value is concealed. Only where the guest offers specific property and the hotel accepts and delivers a receipt, is the exemption made dependent on the innkeeper's freedom from negligence or other fault.

■ At common law, the liability of an innkeeper was that of an insurer. In the absence of loss resulting from an act of God, or of the guest himself, or of the public enemy, the innkeeper warranted the return of the goods of a guest. This liability was a creature of the early methods of travel and places of lodging.

■ Defendant Morton Hotel would have shouldered this liability had it not been for the Michigan Statute limiting the liability of innkeepers in modern times. Such a statute, being in derogation of the common law, must be strictly construed. Davis v. Cohen, 253 Mich. 330, 332, 235 N.W. 173 (1931). But no construction should result in a violation of the plain meaning of the statute. Plaintiffs' interpretation of the proviso in Section 18.312 would do just that.

■ Plaintiffs would have this court rule: that they have established a prima facie case by showing that diamonds were deposited with the hotel, although not disclosed, and that diamonds were lost. For this plaintiffs rely upon Layton v. Seward Corporation, 320 Mich. 418, 31 N.W.2d 678 (1948). Then, plaintiffs allege, the hotel must come forward and

show that the loss was not caused by the theft or negligence of the innkeeper or any of his servants.

First, this overlooks the fact that "Section 18.312 property" was not deposited in the instant case, but was deposited in the Layton case. In the present case "Section 18.311 property" was deposited, that is, a brief case and its contents. Secondly, to arrive at such a conclusion would allow the guest to accomplish by silence what he could not accomplish by disclosure.

Section 18.311 states: "(I)n the case of the loss of a valise * * * and *contents*, [the liability of the keeper] shall not exceed the sum of 50 dollars." "(N)othing * * * shall prohibit an innkeeper from assuming a greater liability than the sum of 250 dollars * *."

Section 18.312 continues: "No innkeeper * * * shall be liable for the loss of [diamonds] * * * belonging to any guest, unless *such guest has offered to deliver the [diamonds]* * * * to such innkeeper". "(T)he keeper of any inn shall not be obliged to receive from any 1 guest * * * property * * * exceeding a total value of 250 dollars, except under special agreement * * *." (Emphasis added.)

The case of Layton v. Seward Corporation, 320 Mich. 418, 31 N.W.2d 678, decided in 1948, and urged by the plaintiffs, construes and applies Section 18.312. But that case specifically discusses

circumstances involving the disclosure of the value of the property inside an envelope.

In that case, *there was an offer by the guest* of an envelope containing $3,500. The clerk knew the envelope contained $3,500 and still accepted it. The guest in the Layton case complied with the requirements of Section 18.312, and was entitled to have the burden placed upon the shoulders of the hotel in proving its freedom from theft and negligence.

In the instant case, Plaintiff failed to comply with Section 18.312.

Plaintiff also urges that the most reasonable rule is that set out by the court in Sagman v. Richmond Hotels, D. C., 138 F.Supp. 407 (1956). The court there did hold that:

"* * * the duty is upon the innkeeper to make inquiry concerning the value."

However, the Virginia Statute being construed by the court did not have any language comparable to that in the Michigan Statute where it says in Section 18.312: unless the guest shall offer such property.[3]

The Sagman case is further distinguishable in that when the guest registered with the desk clerk he announced his desire to place his valise in the vault *and* informed the clerk that the *contents* of the valise were valuable. The court also calls attention to the fact that some state statutes provide, as does Michi-

3. "1. Section 35-10, Code of Va., 1950:
"It shall be the duty of keepers of hotels, inns and ordinaries to exercise due care and diligence in providing honest servants and employees, and to take every reasonable precaution to protect the person and property of their guests and boarders. No such keeper of a hotel, inn or ordinary shall be held liable in a greater sum than three hundred dollars, for the loss of any wearing apparel, baggage or other property not hereinafter mentioned, belonging either to a guest or boarder, when such loss takes place from the room or rooms occupied by such guest or boarder. And no keeper of a hotel, inn or ordinary shall be held liable for any loss by any guest or boarder of

jewelry, money or other valuables of like nature belonging to any guest or board (sic) if such keeper shall have posted in the room or rooms occupied by guests or boarders in a conspicuous place, and in the officer of such hotel, inn or ordinary, a notice stating that jewelry, money and other valuables of like nature must be deposited in the office of such motel, inn or ordinary, unless such loss shall take place from such office after such deposit is made. The keeper of any such hotel, inn or ordinary shall not be obliged to receive from any one guest for deposit, in such office, any property hereinbefore described, exceeding a total value of five hundred dollars."

gan's, that liability is limited unless the innkeeper consents in writing to assume a greater liability. There is nothing in the Virginia Statute relating to an agreement.

The Ohio Supreme Court has on the other hand ruled that it was the duty of the guest to disclose. Chase Rand Corp. v. Pick Hotels Corp. of Youngstown, 167 Ohio St. 299, 147 N.E.2d 849 (1958). The facts of that case are most similar to this case.

The Ohio Statute contains parallel language to the Michigan Statute.[4] It provides that no innkeeper shall be liable for loss of certain property "unless such guest has offered to deliver such property to such innkeeper * * *." With this statutory language, the Ohio rule is patently reasonable and this court agrees with the Ohio court's interpretation of this language.

■ In deciding this motion as one in the form of a motion for summary judgment, the court is aware that before such a motion can be sustained, there must be no genuine issue as to any material fact. McHenry v. Ford Motor Company, 6 Cir. 269 F.2d 18.

■ Summary judgment is an extreme remedy and the facts must be taken as most favorable to the party against whom the motion is sought. Yonkers

Contracting Company v. Maine Turnpike Authority, D.C., 24 F.R.D. 205.

■ In determining whether or not there is a genuine issue as to any material fact, the court must look to the pleadings, depositions, affidavits, and exhibits before it in the case. Mullaly v. Carlisle Chemical Works, Inc., D.C., 177 F.Supp. 588.

The court has concluded that there is no genuine issue as to any material fact necessary and essential to the court's ruling on the motion for summary judgment.

■ First, it has been argued that the defendant Hotel is not entitled to any protection under Section 18.312 because it does not have a "suitable vault". This is not what the statute requires.

The statute says that an innkeeper is entitled to the statutory limitation in Section 18.312 when he constantly has in his inn a *metal safe or a suitable vault* for the custody of money, jewels, precious stones and other valuables.

There is no genuine dispute that the Hotel did have available at all times metal safety deposit boxes. It is undisputed that these safety deposit boxes were of the nature of those employed by banks. The make-up of these boxes included a locking apparatus that could be released only upon the simultaneous application of

---

4. Revised Code of Ohio:

"Section 4721.01. An innkeeper, whether a person, partnership, or corporation, having in his inn a metal safe or vault in good order suitable for the custody of money, bank notes, jewelry, articles of gold and silver manufacture, precious stones, personal ornaments, railroad mileage books or tickets, negotiable or valuable papers, and bullion, and keeping on the doors of the sleeping rooms used by his guests suitable locks, or bolts, and on the transoms and windows of such rooms suitable fastenings, and keeping a copy of this section printed in distinct type conspicuously suspended in the office, ladies' parlor or sitting room, barroom, washroom, and five other conspicuous places in such inn, or not less than ten conspicuous places in all, shall not be liable for loss or injury suffered by a guest, unless such guest has offered to deliver such property to such innkeeper for custody in such metal safe or vault, and the innkeeper has omitted or refused to take and deposit it in the safe or vault for custody and give the guest a receipt therefor."

"Section 4721.02. An innkeeper shall not be obliged to receive from a guest for deposit in the safe or vault, property described in section 4721.01 of the Revised Code exceeding a total value of five hundred dollars, and shall not be liable for such property exceeding such value whether received or not. Such innkeeper, by special arrangement with a guest may receive for deposit in such safe or vault property upon such written terms as may be agreed upon. An innkeeper shall be liable for a loss of any of such property of a guest in his inn caused by the theft or negligence of the innkeeper or his servant."

two keys. One key was in the possession of the hotel; the other key was always in the possession of the depositing agent.

In Chase Rand Corp. v. Pick Hotels Corp. of Youngstown, supra, the trial court charged the jury that "as a matter of law the bank of metal safe deposit boxes constituted 'a metal safe', and that such boxes complied with the requirement of [the Ohio Statute] * * *, that innkeepers must have 'a metal safe or vault.'" The Ohio Supreme Court agreed with this charge.

It is further undisputed that the safety deposit boxes used and offered by the hotel would have· contained the wallets and packets of the precious stones contained in the deposited brief case. Thus, it can be seen that the Hotel had complied with this part of Section 18.312.

No other statutory requirement has been forcibly urged in seeking to foreclose the hotel's use of the statutory limitation declared by Section 18.312.

The second essential fact necessary for the court's conclusion concerns the activities of the guest, Mr. Burger. It is undisputed that Mr. Burger was a guest at the Hotel. The depositions of the various parties to this action show that Mr. Burger did not make any disclosure of the contents of the brief case to the clerk of the Hotel.[5]

5. E. D. Oppenheimer—Direct Examination by Mr. Markle:
"Q. Did you, in the conduct of your business, have any practice with respect to the checking or depositing of this brief case of jewels in hotels during a trip of the kind Mr. Burger was making? In other words, was he instructed to inform the people with whom he left it exactly what it contained? What is the practice? I understand there is a general practice with respect to that which is perhaps approved by insurance companies for carrying a risk.
"A. Well, it varies in different hotels. It is individual. · One hotel will take your merchandise and no questions asked.
Another hotel will ask you to sign a slip reducing their liability.
"Q. What is your practice or the practice of your salesmen, including Mr. Burger, if you are not asked about that?
"A. The practice of Mr. Burger, as far as I was concerned, is to travel about the same way as I did and was to use the utmost of precaution no matter where you were, no matter what you were doing period.
Now, if you come to a hotel and they said: "I refuse to take it unless you tell me that there is only $300 in it" and that is the only way you can put it in the vault, it was my practice to put it in the vault that way and state that there was $300 in it.
My insurance company would back me up on that if that is the only way I could protect my goods.
"Q. In other words, it is not practiced unless absolutely necessary to disclose?
"A. I wouldn't say it was the practice. It was individual according to which hotel you came to.

"Q. From your standpoint?
"A. From my standpoint, I can go to another hotel if they say: 'I don't want any brief case containing any jewelry.' They might recognize me as an old traveler.
"Q. Assuming you went to a hotel and you wanted to check a brief case, is it your practice or did you instruct Mr. Burger or other salesmen to immediately instruct the clerk about the value and so forth?
"A. Mr. Burger and I never told anybody what business we are in.
"Q. That is the general practice?
"A. You bet.
"Q. Any diamond salesman?
"A. You bet.
"Q. To do otherwise is to invite trouble?
"A. We never show anything that would let people know what business we are in. We mind our own business when we are traveling."
Robert A. Burger—Direct Examination by Mr. Markle:
"Q. Tell me in detail just what took place at the desk.
"A. I went to the desk and I told the clerk that I want to put my brief case in the vault. He took out a form, whereupon I wrote my signature on one part of the form and he attached that part to my brief case and gave me a stub.
"Q. You say "he", I take it the clerk was a man?
"A. Yes. ·
"Q. Do you have any recollection as to whether or not he was the only person behind the counter at that time?
"A. Offhand I could not say. He seemed to be the only one.

Plaintiff Oppenheimer testified in his deposition that he would not have disclosed the contents of the brief case even if asked. Conversely, it is admitted that what Mr. Burger offered to the hotel for safekeeping was a valise, a brief case.

Counsel for plaintiffs does not genuinely dispute that there was no disclosure made by plaintiff Burger. During oral argument the court asked counsel for plaintiff three different times whether there was any other testimony that could be offered in support of a contract of bailment of "Section 18.312 property". Counsel could suggest none.

It is apparent, then, that the guest, Mr. Burger, did not comply with the requirements of the statute, in that he did not offer any "Section 18.312 property" to the Hotel for safekeeping. There was no bailment contract concerning any goods enumerated in Section 18.312.

As a matter of fact, in this case, it was impossible for a bailment contract to be created by the parties in relation to the diamonds, because it was the deliberate, studied, planned intent of the plaintiff in this case not to disclose the contents of the valise. The Hotel was charged with a liability of $50 concerning the valise and its contents. It did not know that the valise contained valuable articles as enumerated in Section 18.312.

Plaintiff has argued that the very fact that you deposit something for safekeeping is notice to the Hotel that it has value.

 But any deposit creates notice only to the extent set out in the statute, and the statute says that in the case of a *valise and its contents*, the value is

"Q. Did he ask you what was in the brief case?

"A. No, he didn't.

"Q. Did you tell him what was in the brief case?

"A. No, I didn't.

"Q. I am going to ask you this question: was there anything from the appearance of the brief case either by its own character or appearance by any markings on it that would indicate that it contained jewelry?

"A. No.

"Q. Was it the accepted practice in your business at that time in traveling and carrying jewelry in a brief case, as you did, to inform the hotel clerks as to the contents or was it the practice not to inform them unless it was absolutely necessary?

"A. I have never informed anybody of what my brief case contained and I don't recall offhand ever being asked what it contained.

"Q. Mr. Oppenheimer has testified here this morning and if they told—he would go into a hotel and they told him they didn't take anything over the value of $300, he would say okay, it is $300. Would you give them any idea, for instance, that it contained $40,000 to $50,000 of jewelry? Is that the practice you followed? Is that the accepted practice in the business?

"A. I don't know what you mean by accepted. I was under the impression the insurance company wanted you to use your—let us say brains—in adequately protecting your merchandise.

In order to protect it, the hotel vault would be the best place to leave it. Only recently, have I come across where I have been asked to sign a declaration saying that something does not contain— your brief case does not contain over $300.

I took that up with my insurance agency. He has told me that it would be all right to sign it as of now. Previously, they didn't—

"Q. Before November 1957, do you recall ever anywhere informing any hotel clerk upon checking your brief case exactly what it contained, or the value of it?

"A. I never informed anybody as to what it contained, or its value.

"Q. As you understand it, that practice was known to and approved by the insurance company that insured all these jewelers?

"A. I don't know whether it was approved or not. I know in this case, insurance companies tell most men who are traveling that they were to show a lot of discretion in protecting their merchandise.

"Q. And to declare: here, will you check my bag? It has $50,000 uncut diamonds in it.

That would not be using discretion?

"A. No, that would not be using discretion."

$50. The statute places upon the guest, if he intends to have protection, the burden of making an offer of the contents, as well as the valise, so that the contract of bailment can then spring into being between the parties, if the Hotel elects to receive the article for safekeeping.

The language of Mr. Justice Cardozo, in a case involving a similar statute [6] is most appropriate here:

"The guest at any inn who delivers goods to the innkeeper for storage or safe-keeping in a place other than his own room must state the value of the goods and procure an appropriate receipt. If he fails to to do this, the liability of the innkeeper is limited to $100. In no event, however, is there to be liability in excess of $500 except for fault or negligence. There are similar provisions in respect of liability for merchandise samples or merchandise for sale. From the *beginning of the section to the end, the exemption from liability in excess of the prescribed maximum is absolute where value is concealed. Only where value is stated and a receipt delivered is the exemption made dependent upon freedom from negligence or other fault.*" [Honig v. Riley, 244 N.Y. 105, 155 N.E. 65 (1926). (Emphasis added.)]

There was no disclosure or offer in the present case. The plaintiffs, who are jewelry salesmen, have testified in their depositions that they deliberately select this method of operation. They deliberately withhold any information as to the contents of their valises, and Mr. Oppenheimer testified that the insurance companies back them up in this method of operation.[7]

Now, in the judgment of this court, it may be very prudent on the part of diamond salesmen to proceed in this manner; it may be the height of prudence. But the statute involved makes no exception for jewelry salesmen or diamond salesmen. As guests, they must comply with the requirements of the statute. Any desire for protection of this prudence on their part should be

6. New York statute [General Business Law, McKinney's Consol.Laws, c. 20, § 201]: "No hotel keeper except as provided in the foregoing section shall be liable for damage to or loss of wearing apparel or other personal property in the room or rooms assigned to a guest for any sum exceeding the sum of five hundred dollars, unless it shall appear that such loss occurred through the fault or negligence of such keeper, nor shall he be liable in any sum exceeding the sum of one hundred dollars for the loss of or damage to any such property when delivered to such keeper for storage or safekeeping . in the storeroom, baggage room or other place elsewhere than in the room or rooms assigned to' such guest, unless at the time of delivering the same for storage or safekeeping such value in excess of one hundred dollars shall be stated and a written receipt, stating such value, shall be issued by such keeper, but in no event shall such keeper be liable beyond five hundred dollars, unless it shall appear that such loss occurred through his fault or negligence, and such keeper may make a reasonable charge for storing or keeping such property, nor shall he be liable for the loss of or damage to any merchandise samples or merchandise for sale, unless the guest shall have given such keeper prior written notice of having the same in his possession, together with the value thereof, the receipt of which notice the hotel keeper shall acknowledge in writing over the signature of himself or his agent, but in no event shall such keeper be liable beyond five hundred dollars, unless it shall appear that such loss or damage occurred through his fault or negligence; as to property deposited by guests or patrons in the parcel or check room of any hotel or restaurant, the delivery of which is evidenced by a check or receipt therefor and for which no fee or charge is exacted, the proprietor shall not be liable beyond seventy-five dollars, unless such value in excess of seventy-five dollars shall be stated upon delivery and a written receipt, stating such value, shall be issued, but he shall in no event be liable beyond one hundred dollars, unless such loss occurs through his fault or negligence."

7. Refer to Appendix (5), testimony from depositions.

discussed with and directed to the legislature and not to this Court.

It is clear that with the dual-key apparatus available in the form of safety deposit boxes, the diamond salesman is protected as well as could be expected when his diamonds are on deposit in these safety deposit boxes in the Hotel. To have the diamonds removed from the brief case and placed in these safety deposit boxes, to be sure, may disclose the identity of the guest and his occupation. This in turn may subject him to the observation of accomplished diamond thieves, but this is a risk the diamond salesman must bear, and as it has done in this case, it may insure against such risk.

It is the conclusion of the Court that these undisputed facts require the court to enter summary judgment in favor of defendant Hotel.

The motion of the defendant Hotel is hereby granted, and an order may be drawn accordingly.