Jasen, J.
(dissenting). The majority today holds that a jury and not a court must decide what constitutes a “safé” within the meaning of section 200 of the General Business Law. Since I believe that it is a well-established principle of law, based upon sound policy considerations, that it is for the court, rather than a jury, to construe the meaning of words contained in a statute, I am compelled to dissent from the majority holding.
What is involved here is simply a question of pure statutory construction. The issue presented is whether or not a bank of individually locked metal safe-deposit boxes enclosed in a separate sheetrock room constitutes a “safe”, as that term is used in section 200 of the General Business Law.
The New York Legislature enacted chapter 421 of the Laws of 1855, the predecessor to current section 200 of the *222 General Business Law, for the purpose of protecting hotels from “undisclosed excessive liability”. (Millhiser v Beau Site Co., 251 NY 290.) In order to avail itself of the statutory limitation of liability, a hotel is required, inter alia, to make a safe available to guests who wish to safeguard their valuables. The Legislature, however, did not define the term “safe”, nor did it provide a list of the different types of facilities which would be encompassed by that term. Instead, as lawmakers often do when it is impossible to spell out in advance every contingency in which the statute could apply (see People v Illardo, 48 NY2d 408, 416), the Legislature left it to the courts to give content to the word “safe”. This long-standing practice is embodied in well-established rules of statutory construction and precedents of this and other courts.
It is a fundamental principle of our system of administering justice that the jury decides questions of fact while the Judge decides questions of law. It is equally basic that the construction of a statute is a question of law to be resolved by the court. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 77; 56 NY Jur, Statutes, § 106).[1] “[Q]uestions in regard to the interpretation, construction or effect of written documents are for the court alone, and for the judge to submit such questions to the jury is error. This rule applies to all written laws, constitutional provisions, statutes, etc.” (Bush v Delaware, Lackawanna & Western R. R. Co., 166 NY 210, 226.) It is too plain for argument that “[tjhough the terms used in a statute are technical or unusual, or are ambiguous, the judge should not leave their meaning to the jury.” (McKinney’s Cons Laws of NY, Book *223 1, Statutes, § 77 [emphasis supplied].) The cases adhering to this fundamental principle are legion.[2]
Thus, it would seem to me that it is for the court to give each word or phrase of a statute its appropriate meaning. In doing so, the court must look primarily to the intent of the Legislature. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 230.) As we recently stated, “the provisions [of a statute] must be interpreted as a whole, giving the words a meaning which serves rather than defeats the over-all legislative goals.” (Matter of Allstate Ins. Co. v Shaw, 52 NY2d 818, 820.) “It is fundamental that a statute must be read with the legislative goal in mind, so that controversies generated by ambiguities or gaps in the law may be resolved in accordance with the legislative scheme. (See 1 Kent Commentaries 462.)” (Matter of Pell v Coveney, 37 NY2d 494, 496; see, also, Matter of Kelly v Sugarman, 12 NY2d 298.) That the court, rather than a jury, should be the proper body to construe the meaning of words contained in a statute in accordance with the intent of the Legislature cannot be seriously disputed, for if the meaning of a word contained in a statute, such as the term “safe” as used in section 200 of the General Business Law, were to be decided on an ad hoc basis by a jury rather than the courts, the availability to hotels of the statutory limitation of liability would be subject to the vagaries of a body of lay individuals possessing no training or expertise in the task of discerning and applying legislative intent so as to effectuate the purposes and policies underlying the statute. The adoption of such a procedure will bring about widely divergent results which are in no way based on what the lawmakers intended to accomplish when they enacted the statute. Indeed, under the majority’s view, a bank of safe-deposit boxes contained in a sheetrock room in a Buffalo hotel could be determined by a Buffalo jury to be a “safe” *224 within the meaning of the statute, thus limiting the hotel’s liability to $500, while the identical facility installed by an Albany hotel might be found by an Albany jury not to be a “safe” within the meaning of the statute, in which case the unfortunate Albany hotel would not be afforded the protection of the statute and would be subject to unlimited liability for losing a guest’s valuables, the válue of which was never disclosed.
In my opinion, based upon the conceded purpose of the statute, such a result could not have been intended by the Legislature. Consequently, recognizing that legislative intent is the keystone to statutory construction, I believe it imperative that the court, not a jury, construe the term “safe” in such a way as to give a meaning to the term “which serves rather than defeats the over-all legislative goals.” (Matter of Allstate Ins. Co. v Shaw, 52 NY2d 818, 820, supra.) Until today, we have, almost without exception, zealously adhered to this rule. (See Matter of Mobil Oil Corp. v Finance Administrator of City of N. Y., 58 NY2d 95 [“maintenance” does not include cleaning services within the meaning of subdivision 6 of section L46-1.0 of the Administrative Code of the City of New York]; Weinberg v D-M Rest. Corp., 53 NY2d 499, 506 [“fee” as used in section 201 of the General Business Law does not include a tip]; Zaldin v Concord Hotel, 48 NY2d 107 [hotel did not “provide” a safe within the meaning of section 200 of the General Business Law]; Matter of Smith [Great Amer. Ins. Co.], 29 NY2d 116 [no “physical contact” between two vehicles within the meaning of section 617 of the Insurance Law]; MVAIC v Eisenberg, 18 NY2d 1 [there was “physical contact” between two vehicles within the meaning of section 617 of the Insurance Law]; Matter of Kelly v Sugar-man, 12 NY2d 298, supra [31-year-old man with intelligence of a child was “crippled” within the meaning of subdivision 2 of section 16 of the Workers’ Compensation Law].)
Certainly, in a common-law negligence action, the question of whether a person is crippled or whether there was physical contact between two vehicles or whether a hotel provided a safe could present factual questions calling for resolution by a jury. (See Akins v Glens Falls City School *225 Dist., 53 NY2d 325.) A critical distinction, which the majority fails to perceive, must be drawn, however, where the Legislature has used such terms in a statute, in which case a purely legal question is presented, requiring the court, rather than a jury, to construe their meaning. Adopting a rule, as the majority does today, whereby a jury of lay persons is charged with the responsibility of giving content to statutory language, overrules well-established law without any justification for the change. Moreover, the new rule will destroy the confidence which lawmakers heretofore have had that the terms of their statutes will be construed and applied by the court in a uniform manner in accordance with the purposes sought to be achieved. Indeed, the wholly unacceptable result of the majority’s holding will be that, as a practical matter, in every case where the plaintiff alleges that no “safe” was provided within the meaning of the statute, the question will have to be submitted to a jury.
The highest courts of three other States have addressed the same issue presented here and have unequivocally held that the question as to what constitutes a “safe”, as that term was used in various statutes, is a question of law. In State v Stoner (473 SW2d 363 [Mo]), the Supreme Court of Missouri held that a coin receptacle in a pay phone is a “safe” within the meaning of a statute prohibiting possession of tools commonly used to break into safes. The court recognized that the content given such a term depended upon the intent of the Legislature in enacting the statute. Similarly, in Smith v Mine & Smelter Supply Co. (32 Utah 21, 25-26), the Utah Supreme Court held that whether or not a facility constituted a “vault or safe” within the meaning of a statute regulating the storage of explosives is a question of law. Finally, in a case on point with the instant case, the Ohio Supreme Court held that the trial court properly charged the jury that a bank of metal safe-deposit boxes constituted a “metal safe” as a matter of law. (Chase Rand Corp. b Pick Hotels Corp. of Youngstown, 167 Ohio St 299.)
It is abundantly clear, therefore, based on the aforementioned cases and long-established principles of statutory construction, that the question whether or not the *226 facility provided by defendant for the storage of its guests’ valuables is a “safe”, as that term is used in section 200 of the General Business Law, is a pure question of law to be decided by this court.
Turning to the case before us, I would hold that the subject facility is a “safe” within the meaning of the statute. In arriving at this conclusion, it is necessary to first consider “the context of the statute, the purpose and spirit of it, the surrounding circumstances, and — above all — the intention of the lawmakers.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 235, citing Mangam v City of Brooklyn, 98 NY 585; People ex rel. Lichtenstein v Langan, 196 NY 260; and People v City of Buffalo, 57 Hun 577.)
As previously stated, the principal purpose underlying the enactment of the statute before us was to protect hotels from undisclosed excessive liability by requiring guests who wished to have hotels safeguard property worth in excess of $500 to disclose the value of such property so that the hotel could take whatever steps necessary, based upon the value of the property, to assure its protection. (Millhiser v Beau Site Co., 251 NY 290, supra.) The majority, however, appears to be of the view that the statute is primarily concerned with insuring the protection of guests’ valuables. This misperception is apparent in the majority’s assertion that (at p 217) “[a] large, luxury hotel has far different security needs than a small, low-priced motel catering to a different clientele. It would be inappropriate for this court, with its lack of expertise, to specify a single safe that must be used by all hotels and motels, not only because of their varying needs but also because of the flexibility that is left to the proprietor”.
The Legislature, in sharp contrast to the majority’s position, made it clear that the differences between various types of hotels catering to different clienteles were no longer relevant with respect to an innkeeper’s liability. This was done by requiring all hotels desiring to avail themselves of the statutory limitation of liability to provide a safe. By limiting a hotel’s liability to $500 per guest, it should be abundantly clear that the Legislature envisioned that hotels would provide a safe of a type that would be adequate to safeguard $500 worth of property. It would *227 be manifestly illogical to state, as one of the plaintiff’s affiants did, that the Legislature intended to require a hotel, as a prerequisite to reliance on section 200, to install the same type of safes and vaults used by banks and other institutions that are responsible for safeguarding valuables worth millions of dollars merely to safeguard $500 worth of property. Indeed, the statute is designed to require guests to reveal the value of property they want the hotel to store so that the hotel can, if it chooses to by agreeing in writing, make arrangements elsewhere to provide the type of protection which may be unavailable at the hotel, but which is necessary to safeguard property worth significantly more than $500. Furthermore, the fact that some patrons frequenting a “large, luxury hotel” have different security needs than those patronizing “a small, low-priced motel” was precisely the reason why the Legislature enacted section 200. The type of safe provided is of secondary importance to the need of the hotel to be made aware of the value of such property. If value is undisclosed, the hotel is justified, under the express language of the statute, in assuming that the property so entrusted is worth $500 or less.[3] Consequently, if a “safe” which is adequate to protect $500 worth of valuables is provided, the limitation of liability provided by section 200 is available. As the Supreme Judicial Court of Maine cogently observed in construing a similar statute: “The hotelkeeper is not a banker; and he is not in the business of operating a safe deposit vault except as an incident to operating a hotel. It is not, therefore, unreasonable to restrict his liability for such incidental services rendered to his guests within such limits as will meet their ordinary needs. Those who carry with them large amounts of money or jewelry must take other measures for their protection. The added cost to the hotelkeeper of providing for such protection even as against the willful act or negligence of an employee, is in the last analysis one of his costs of operation reflected in the rates charged to all. Why should those *228 guests who do not need such protection pay for the cost of those who do?” (Levesque v Columbia Hotel, 141 Me 393, 398.)
While it would go too far to say that the Legislature cared nothing for the security of property belonging to the guests of a hotel, especially since the Legislature required that a safe be provided, it is imperative that the statute be construed in light of the fact that the primary concern of the lawmakers in enacting section 200 was to “protect the hotel from an undisclosed excessive liability”. (Millhiser v Beau Site Co., 251 NY 290, 294, supra; Zaldin v Concord Hotel, 48 NY2d 107, 112, supra.)
In light of the conceded purpose of the statute, I believe that the facility provided by the defendant here clearly falls within the meaning of the term “safe” as it is used in section 200,[4] since it was more than sufficient to safeguard $500 worth of property per guest. This conclusion finds support in both the plain meaning of the term and the decisions in other jurisdictions that have addressed the issue.
To assist a court in properly construing a term contained in a statute, resort may be had to definitions provided by lexicographers. (Quotron Systems v Gallman, 39 NY2d 428; McKinney’s Cons Laws of NY, Book 1, Statutes, § 234.) Black’s Law Dictionary defines a safe as “[a] metal receptacle for the preservation of valuables.” (Black’s Law Dictionary [5th ed], p 1199.) The identical definition is given in Bouvier’s Law Dictionary and in Words and Phrases (38 Words & Phrases, “Safe”, 1982 Cum Ann Pocket Part, citing Buntin v State, 117 Ga App 813). Webster’s Dictionary defines a safe as “a place or receptacle to keep articles (as provisions or valuables) safe.” (Webster’s Seventh New Collegiate Dictionary, p 757.) Finally, the term “safe” is defined once again in Words and Phrases as, inter alia, “a receptacle in which valuables are placed to complete their safety.” (38 Words & Phrases, *229 “Safe”, p 9, citing Columbia Cas. Co. v Rogers Co., 157 Ga 158, 160-161.) The individually locked metal safety-deposit boxes, enclosed in a sheetrock room, which were provided by defendant, fall within all of these commonly accepted definitions of the term “safe”.
In addition to the afore-mentioned definitions and the intent of the Legislature to protect hotels from excessive undisclosed liability, our holding finds further support in the decisions of at least two other States that have addressed the issue. A Federal District Court in Michigan held that a defendant hotel provided a “metal safe or a suitable vault” within the meaning of a Michigan statute similar to New .York’s where it had made available safety-deposit boxes which contained a locking apparatus that could be released only upon the simultaneous application of two keys, one of which was held by the guest while the other was in the possession of the hotel. (Oppenheimer v Morton Hotel Corp., 210 F Supp 609, affd 324 F2d 766.) The court reasoned that since these boxes were similar to the kind employed in banks, they constituted a “safe” within the contemplation of the statute. The defendant in this case provided an identical facility.
In a similar case, Chase Rand Corp. v Pick Hotels Corp. of Youngstown (167 Ohio St 299, 305, supra), which the Oppenheimer court relied on, the Ohio Supreme Court held that “as a matter of law the bank of metal safe deposit boxes constituted ‘a metal safe,’ and that such boxes complied with [the Ohio statute].”
There can be little doubt that the defendant’s safe-deposit box facility was a “safe” as that term is commonly defined, as it has been construed by .other courts and, most especially, as the New York Legislature intended it to be construed. Nor is it insignificant that in the century and a quarter that this statute has been on the books, there is nothing in the reported cases to suggest, until now, that the availability of the statutory protection might turn on the type of “safe” provided by the innkeeper.
Finally, some mention should be made as to the enforceability of the agreements signed by plaintiffs limiting the hotel’s liability to $500.1 agree that the agreements signed by the parties purporting to limit the hotel’s liabil *230 ity to $500 do not operate to achieve any such limitation of liability in the cases before us, but I reach this conclusion for quite different reasons than does the majority. I cannot agree that the agreements were unenforceable for lack of consideration. The promise of the hotels to provide safekeeping facilities would support their guests’ promises to limit the liability of the hotels. (See 1 Corbin, Contracts, § 136, p 579; Restatement, Contracts 2d, § 74.) To suggest that the promise of the hotels could not serve as consideration because it merely restated their statutory obligation is incorrect. Section 200 imposes no obligation on a hotel to provide a safe for storage of valuables; the statute merely conditions the limitation of the hotels’ liability to $500 on the provision of such a safe.
These agreements, however, would not serve to limit the liability of the hotels in the circumstances of these cases. As contracts of exoneration, rather than of indemnity, they would not serve to exculpate the hotels for liability for their own negligence in the absence of an explicit reference to exoneration for such liability. (Gross v Sweet, 49 NY2d 102.)
For the reasons stated, I would hold that defendant’s liability is limited to $500 and affirm the order of the Appellate Division awarding both plaintiffs said sum.
Judges Wachtler, Fuchsberg and Meyer concur with Chief Judge Cooke; Judge Jasen dissents and votes to affirm in a separate opinion in which Judges Jones and Simons concur.
Order modified, with costs to plaintiffs, in accordance with the opinion herein and, as so modified, affirmed.

. (See, also, Matter of Sigety v Hynes, 38 NY2d 260, cert den 425 US 974; Rankin v Shanker, 23 NY2d 111; State v Union Tank Car Co., 281 Ala 246; Bodinson Mfg. Co. v California Employment Comm., 17 Cal 2d 321; United Presbyt. Assn, v Board of County Comrs. of County of Jefferson, 167 Col 485; Pascale v Board of Zoning Appeals of City of New Haven, 150 Conn 113; Lime-Cola Bottling Co. v Atlanta & West Point R.R. Co., 34 Ga App 103; Barnett v Reed, 93 Idaho 319; Howes v Nathan, 15 Ill App 2d 48; Miller Oil Co. v Abrahamson, 252 Iowa 1058; Smith v Wilson, 269 SW2d 255 [Ky]; Emery v Asher, Jr. & Sons, 196 Md 1; Aikens v Department of Conservation, 387 Mich 495; Sobrio v Cafferata, 72 Nev 145; State ex rel. Department of Health v City of Hoboken, 130 NJ Eq 564; Booze v District Ct. of Lincoln County, 365 P2d 589 [Okla]; Crouch v Craik, 369 SW2d 311 [Tex]; State ex rel. Humiston v Meyers, 61 Wn 2d 772.)

. (See Armstrong Co. v Nu-Enamel Corp., 305 US 315; Watkins v National Elec. Prods. Corp., 165 F2d 980; Smith v Hobart Mfg. Co., 194 F Supp 530, revd on other grounds 302 F2d 570; Salinas v Kahn, 2 Ariz App 181, mod on other grounds reh den 2 Ariz App 348; Seybert v Imperial County, 162 Cal App 2d 209; Crosby Aeromarine v Hyde, 115 Ga App 836; Howes v Nathan, 15 111 App 2d 48; Tillotson v Abbott, 205 Kan 1QQ-, Falcone v Palmer Ford, 242 Md487; Schroeder v O’Neill, 166 SC 515; Henrie v Rocky Mountain Packing Corp., 113 Utah 444; Breiby v Department of Admin., 55 Wis 2d 16.)

. This is all the more so in a case such as this where both plaintiffs signed an agreement that they would not deposit more than $500 worth of property in their safety-deposit boxes and that they would not hold the defendant liable for more than $500 in the event their property was lost or stolen.

. The record reveals that -defendant provided individually locked metal safety-deposit boxes for the use of its guests. The guest and the hotel each held a key to the guest’s box. The safety-deposit boxes were housed in a separate room with sheetrock walls. Access to the room could be had only by passing through two-inch thick wooden doors, at least one of which was secured by an iron tumbler-type lock.