BRAMS *v.* BRIGGS.

1. APPEAL AND ERROR—REPLEVIN—FINDING OF COURT—EVIDENCE.
   In action of replevin against parties claiming innkeeper's lien, finding of court that plaintiff suffered only $50 damages for damage to, or loss of, his goods subsequent to taking possession by defendants *held,* sustained by the record.

2. INNKEEPERS—TRANSIENT NATURE OF GUEST'S RELATIONSHIP.
   One essential element of innkeeper-guest relationship at common law was that the person to whom accommodation was extended must be a transient, coming to the inn for a more or less temporary stay, hence common-law innkeeper's lien does not exist in favor of keeper of building operated as a permanent residence hotel.

3. SAME—LODGER—RESIDENCE HOTEL—LIENS.
   One who obtained room in permanent residence hotel under
   special arrangement with proprietor for permanent stay, who
   had merely use of room while management retained general
   control and furnished maid service *held*, lodger within meaning
   of statute giving proprietor lien on lodger's goods, baggage
   and effects to secure payment of charges (2 Comp. Laws 1929,
   § 8791).

Appeal from Wayne; Gordon (Arthur E.), J., presiding. Submitted April 2, 1935. (Docket No. 25, Calendar No. 37,960.) Decided May 17, 1935.

Replevin by Samuel A. Brams against Lester Briggs and another for office equipment, personal apparel and furniture held under a lien by virtue of 2 Comp. Laws 1929, § 8791. Floyd A. Frye, administrator of the estate of Lester Briggs, deceased, substituted as party defendant. Judgment for defendant. Plaintiff appeals. Affirmed.

*J. Clair Wilson*, for plaintiff.

*Ralph E. Routier*, for defendant.

BUTZEL, J. On November 7, 1929, Samuel S. Brams on registering at the Briggs Hotel in Detroit was assigned to room 1208. His registration card stated that he was to pay at the rate of "$90" but it is undisputed that actually a rate of $85 per month was fixed by arrangement with the late Lester Briggs, then proprietor of the hotel. The building was operated as a permanent residence hotel, the nature of the lay-out of the rooms being such that people remained there for months and years at a time. The record leaves it uncertain as to whether Brams rented the room furnished, and substituted his own furniture for that of the hotel. At any rate he did

install his own furniture, including a large safe, desk, couch, chairs, etc. The hotel supplied the wall beds or beds. Plaintiff used the room as his business headquarters, and also slept there when in town and in the vicinity of the hotel. Although he made frequent trips away from Detroit, his furniture remained in the room and he continued to pay rent. He kept the key to his room at all times, and did not have to call at the desk in order to be allowed to get into the room. The hotel furnished maid service for the room, and also provided bell boys for the convenience of the guests.

Brams became delinquent in his payments, and on May 8, 1930, his room was locked by the hotel management and his goods were seized on account of an unpaid bill of $242.10 for charges incurred during his stay. He thereupon brought a replevin action with a count for conversion, against Lester Briggs, the hotel, and one of its employees. Defendants claim a lien on the goods detained, by virtue of 2 Comp. Laws 1929, § 8791, which provides:

"That whenever the keeper of any hotel or inn or boarding or lodging house shall receive into his hotel or inn or boarding or lodging house any person as a guest or boarder or lodger, he shall have a lien upon and right to detain the baggage and effects of such guest or boarder or lodger to secure and compel payment of his customary charges for the food and lodging furnished such guest or boarder or lodger, and such lien may be enforced in the manner hereinafter prescribed."

Upon the death of Briggs, the administrator of his estate was substituted as party defendant. The trial judge found that the relationship between the hotel and plaintiff was one of innkeeper and guest, and that the former was therefore entitled to a lien

for $192.10, with interest from May 8, 1930, being the amount of the unpaid bill, less $50 found to be due to plaintiff for damages to, or loss of, his goods subsequent to the taking of possession by defendants. Plaintiff claims that he lost a much larger sum, but the judge's findings on this point are sustained by the record.

The sole question on appeal is whether plaintiff's relationship with the Hotel Briggs was one of guest, boarder or lodger in a hotel, inn, boarding or lodging house, so as to give defendants the right to the statutory or common-law lien. From the facts appearing in the meagre record, it does not seem that there was the relation of innkeeper and guest which gave rise to the innkeeper's lien under the common law. One of the essential elements of the innkeeper-guest relationship at common law was that the person to whom accommodation was extended must be a transient, coming to the inn for a more or less temporary stay. In *Carter* v. *Hobbs,* 12 Mich. 52 (83 Am. Dec. 762), the following definition appears:

"An inn would seem to be a house kept for the accommodation and entertainment of travelers and wayfaring men, and not for those residing in the same neighborhood, who may visit, or others who may remain at the house for some special purpose not connected with passage or travel. * * *

"So if a person come to an inn on a special contract to board there, the law treats him not as a guest, but as a boarder."

See, also, *Horner* v. *Harvey,* 3 N. M. 307 (5 Pac. 329); *Cedar Rapids Investment Co.* v. *Commodore Hotel Co.,* 205 Iowa, 736 (218 N. W. 510, 56 A. L. R. 1098); *Crapo* v. *Rockwell,* 48 Misc. Rep. 1 (94 N. Y. Supp. 1122).

It will be noted, however, that the statute (2 Comp. Laws 1929, § 8791) is very broad in its scope, and applies to the keepers of any hotel or inn or boarding or lodging house. It was further extended, by Act No. 95, Pub. Acts 1931, to keepers of furnished apartments, but defendants cannot and do not make any claim by virtue of this amendment. Although there may be much force in plaintiff's contention that there was no innkeeper-guest relationship such as to give rise to the lien accorded either under the statute or at common law to an innkeeper over the goods of a guest, we believe that if plaintiff was not a guest in a hotel, he was at least a lodger and thus came under the purview of the statute.

In *McIntosh* v. *Schops,* 92 Ore. 307 (180 Pac. 593), plaintiff rented rooms in the Standish Hotel, which furnished accommodations to transients and permanent roomers. He paid rent at the rate of $12 per month for a period of over two years. The court held that since plaintiff's occupancy was of a permanent nature, at a fixed rental per week or month, he was *prima facie,* in the absence of evidence to the contrary, a lodger or boarder rather than a guest, and defendant was therefore not liable to him as an insurer for the loss of his goods. The court stated:

"The distinction at common law between an innkeeper and a boarding or lodging house keeper was that the innkeeper catered to the traveling public— the transient traveler. * * * The lodging-house or boarding-house keeper, on the other hand, took care of more permanent customers, who remained for longer periods and more or less permanently in the same place."

In *Fox* v. *Windemere Hotel Apartment Co.,* 30 Cal. App. 162 (157 Pac. 820), plaintiff, who had rented three rooms in the Windemere Hotel Apart-

ments at the rate of $55 a month, was held to be a "lodger" within the meaning of the California statute giving a lien to hotel, inn, boarding house and lodging house keepers upon the goods of guests, boarders or lodgers. The evidence showed that the building contained 58 apartments or suites; that defendant resided on the premises and at all times had control and supervision over the same; that it had a hotel keeper's license; that defendant retained keys to all suites or apartments and had access to them at all times to keep them in order. The court stated:

"Where, as here, the testimony shows that the house was under the direct control and supervision of the owners, that the rooms were furnished and attended to by them, and that they or their servants retained the keys thereto, a person renting such a room makes himself a lodger and not a tenant."

Also, see, *Carroll* v. *Cooney,* 116 Conn. 112 (163 Atl. 599). In the instant case plaintiff obtained his room by special arrangement with the proprietor, Mr. Briggs, at a certain fixed rate, and his stay was of a permanent nature. It also appears from the record that plaintiff had merely the use of his room, the hotel management retaining the general control and furnishing maid service, etc. Under this state of facts, we believe that plaintiff's relation with defendant was that of a lodger, and defendant is therefore entitled to a lien under the statute.

The judgment is affirmed, with costs to defendant.

POTTER, C. J., and NORTH, FEAD, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred. NELSON SHARPE, J., did not sit.