LAYTON *v.* SEWARD CORPORATION.

1. INNKEEPERS—GUEST—BOARDER—QUESTION OF FACT—METHOD OF PAYMENT.

> Whether a person who procures accommodation at an inn or hotel is to be regarded as a guest or as a boarder is a question of fact to be determined by a consideration of all the circumstances attending each particular case and the fact that payment for accommodations is made at a fixed rate per week or month is merely one circumstance to be considered in making such determination.

2. SAME—JOCKEY—GUEST.

> Where jockey, a nonresident, who with his wife stayed in a single room at defendant's place, called a "hotel," during racing season without a lease or definite term of tenancy, in which room there was posted a notice that hotel would not be responsible for money left in the rooms and that a safe was provided for the convenience of the guests in the front office and defendant assumed no liability other than that provided for in the State innkeeper's act, the relation between plaintiff and defendant was that of innkeeper and guest (2 Comp. Laws 1929, § 8803 *et seq.*).

3. SAME—LIABILITY FOR LOSS OR INJURY TO GUEST'S PROPERTY—BAILMENT.

> The liability of an innkeeper in this State for loss of or injury to personal property of his guest is not that of a gratuitous bailee but that of a depository for hire where the guest pays for services tendered, including use of innkeeper's safety depository (2 Comp. Laws 1929, § 8803).

4. SAME—BAILMENT OF MONEY—COMMON LAW—STATUTES.

> Innkeeper, as bailee of guest's money, had the duties and responsibilities imposed upon him by the common law, as conditionally modified by statute (2 Comp. Laws 1929, § 8803 *et seq.*).

5. SAME—LIABILITY FOR GUEST'S PROPERTY—COMMON LAW.

Generally, at common law, an innkeeper is liable for the goods of the guest lost in the inn, unless the loss is the act of God or of a public enemy, or by fault of the owner.

6. SAME—COMMON LAW—STATUTES.

The statute limiting the liability of an innkeeper is in derogation of the common law, and must be strictly construed (2 Comp. Laws 1929, § 8803 *et seq.*).

7. STATUTES—CONSTRUCTION.

In construing a statute, it must be read as a whole and applied to the facts of the case.

8. INNKEEPERS—LOSS OF GUEST'S MONEY—BURDEN OF PROOF.

Where guest left envelope containing $3,500 with hotel clerk for safekeeping in office safe and money was not returned when called for, the loss is presumed to have been caused by the theft or negligence of the innkeeper or his employees and the innkeeper is liable to the guest since the innkeeper then has the burden of showing the absence of such theft or negilgence (2 Comp. Laws 1929, § 8404).

9. BAILMENT—FAILURE TO RETURN CHATTEL—NEGLIGENCE.

When bailed chattels are not returned at all, the law presumes negligence and casts upon the bailee the onus of showing he was not negligent.

10. INNKEEPERS—LOSS OF GUEST'S MONEY LEFT FOR SAFEKEEPING—AUTHORITY OF CLERK.

Bailee-innkeeper, whose clerk accepted plaintiff guest's $3,500 in money for safekeeping, was liable for loss thereof notwithstanding statutory limitation on liability of innkeepers printed on envelope containing the deposit which also limited clerk's authority where such limitation was commonly disregarded and such disregard was known to the president of the defendant corporation (2 Comp. Laws 1929, § 8404).

11. SAME—LIMITATION ON AUTHORITY OF CLERK—STATUTES—THEFT—NEGLIGENCE.

A printed limitation on authority of a hotel clerk in the matter of receiving a guest's valuables for safekeeping, which limitation was not adhered to by the innkeeper did not deprive guest of statutory protection from loss caused by theft or negligence of innkeeper or any of his servants (2 Comp. Laws 1929, § 8404).

Appeal from Wayne; Jayne (Ira W.), J. Submitted January 13, 1948. (Docket No. 63, Calendar No. 43,929.) Decided April 5, 1948.

Case by James R. Layton against Seward Corporation, a Michigan corporation, for negligence in failing to keep safely money left with it. Judgment for plaintiff. Defendant appeals. Affirmed.

*A. Lewis Fineberg* and *Gabriel Cohn* (*Robert D. Anspach,* of counsel), for plaintiff.

*Samuel H. Rubin,* for defendant.

NORTH, J. In this suit, tried in the circuit court without a jury, plaintiff had judgment for $3,500. The defendant has appealed.

The Seward Corporation owns and operates the Seward Hotel in Detroit. Plaintiff and his wife occupied a room in the hotel from some time in May, 1945 until the latter part of September. Relative to the circumstances which gave rise to this litigation, we quote the following. Plaintiff testified:

"I had three occasions, while living at the Seward Hotel, to leave money for safekeeping with the clerk, each time leaving about four or five hundred dollars. On the 16th of July, 1945, I had with me, $3,500 in $50 and $100 bill denominations. I got an envelope from Cliff Tuttle, the clerk down at the desk, and put the money in it. He said, 'You will have to write on the stub how much money was in it.' So I wrote $3,500. I sealed the envelope. * * * He gave me in return, that stub marked exhibit 1. It is a refunder's check. You have to refund (return) that to get your envelope. It is off the envelope. There were two (checks). The other had the same number as this one. It was left on the envelope. I told him $3,500 is in the package. I signed my name on the

other one and that one he tore off and handed to me. I wrote $3,500 on both of the stubs. He was to put it in the safe and keep it for me.    *    *    *

"*Q.* Did Mr. Tuttle tell you that the hotel was only liable for $250 when you gave him the money?

"*A.* Not that I remember, sir.    *    *    *

"I was a monthly tenant, paying my rent by the month."

Clifton E. Tuttle, the hotel clerk who received the envelope from plaintiff, testified:

"I have been a desk clerk at the Seward Hotel four years. I know Mr. Layton. He lived at the hotel. He was a monthly tenant, paying his rent by the month. He came in for the riding season, possibly in May until it ended sometime in September. I was at the desk on July 16, 1945. Mr. Layton delivered a package to me for safekeeping.    *    *    * I took the envelope reported to have the money in it. I told him to write his name on it, on the original ticket which remains with the envelope. I told him he must write his name on it, which he did. He did not write $3,500 on both stubs in my presence. I don't know what he put in the safe. I accepted the envelope that he had.    *    *    * When this envelope was handed to me by Mr. Layton, I didn't know what was in it. He signed his name and I handed him back exhibit 1.    *    *    * I didn't ask the contents of it.

"*Q.* Did anybody tell you what was in the package?

"*A.* Yes, he had Mr. Ferris with him, his agent. Said there was $3,500 in there. I remarked only insured for $250.

"*Q.* What did they say?

"*A.* Didn't say anything. Gave it to me just the same.

"*The Court:* He told you at the time that he gave it to you, there was $3,500?

"*A.* They made the remark between them.

"*The Court:* But you heard it?

"*A.* That is right.  *  *  *

"There wasn't any robbery, holdups or burglaries in that hotel to my knowledge, during July, August or September. Eight men had access to the vault or safety deposit box in the hotel, besides myself. Nine altogether.  *  *  *.

"*The Court:* When he told you there was $3,500 in that, you still accepted it?

"*A.* Yes, sir.  *  *  *

"*The Court:* So it wasn't custom apparently to put in value of contents.

"*A.* That is right.  *  *  *

"*The Court:* But it says here: "The contents of this envelope do not exceed a value of.' Was that left blank in that 509 (number on plaintiff's envelope)?

"*A.* I don't recall. I know said something about $3,500 between the two of them. That is when I explained to them insured for $250.

"*The Court:* But nevertheless you took it in.

"*A.* That is right."

Barbara Allen, another of the hotel clerks, testified:

"I was there in September, 1945, and saw Mr. Layton. He came up and asked for his envelope and produced the stub that goes with it. I proceeded to open the box where we kept them and there wasn't anything in there for Mr. Layton. We have security boxes; a series of them. Two keys to each box. It has to have a master key and another key. I immediately called Mr. Cavanaugh (the hotel manager). I found out that Mr. Tuttle had taken in the package. Mr. Cavanaugh called Mr. Tuttle. Mr. Layton was there. The conversation related to what deposits had been made; what had happened and who had taken it in.  *  *  *

"*The Court:* And it should have had the value in writing there, shouldn't it?

"*A.* They write it on sometimes and sometimes they don't.   *   *   *

"*The Court:* There is a place for the amount there?

"*A.* I would say all depends upon the clerk that took it in.

"I immediately called Mr. Cavanaugh. He questioned all the employees in the office. He didn't find out where the money went. I never found out at any time that there was $3,500 in the envelope. When Layton asked for the envelope, it was the first I knew that there was $3,500 in it. So far as I know, it was never returned to him, nor has the envelope in which the money was placed ever been found."

The initial point of divergency between these litigants seems to be this. Appellant asserts that the relation between the parties was that of landlord and tenant, and in consequence defendant, as bailee, was required to exercise only ordinary or reasonable care in performing its duties. On the contrary, appellee contends the relation or status of the parties was that of innkeeper or hotel keeper and guest, incident to which an innkeeper, as bailee, is required to exercise a much stricter degree of care. The trial judge held to the latter contention; and, for reasons hereinafter noted, we find he was correct in so holding.

It may be noted at the outset that, in passing upon the above issue, little or no weight can be given to the terminology of these parties in their pleadings or testimony, as to plaintiff being a tenant or a guest. For example, in count 1 of his declaration, plaintiff alleges he "was a *tenant* of the said hotel," and defendant admits the allegation. But in counts 2 and 3 plaintiff alleges he "was a *guest* of the Seward Hotel," and defendant admits the truth of each of these two allegations. On the phase of the law

under consideration an extensive note appears in 12 A. L. R. 261, wherein it is stated:

"Whether a person who procures accommodation at an inn or hotel is to be regarded as a guest or as a boarder is a question of fact to be determined by a consideration of all the circumstances attending each particular case. See 14 R. C. L. p. 499. The fact that payment for the accommodation is made at a fixed rate per week, month, or the like, is merely one of the circumstances entitled to consideration, and accordingly it seems to be well settled that such a manner of payment is not of itself sufficient to change the ordinary relation of innkeeper and guest, and constitute the accommodated person a boarder or lodger."

While some cases may be found which seemingly are not in full accord, many cases are cited in support of the above, among them, *R. L. Polk & Co.* v. *Melenbacker,* 136 Mich. 611. In that case a headnote reads:

"Where a person went to a public hotel as a guest, and was received and treated as such, the fact that, after he had remained a week, he was charged at a weekly rate corresponding to that charged those having similar accommodations, did not change his *status* as a guest."

The record before us discloses the following circumstances as criteria of the relationship of innkeeper and guest. (1) Plaintiff was not a resident of Detroit. His stay there was merely as a jockey during the racing season. (2) He had no lease or definite term of tenancy with defendant. (3) The place where he stayed is labeled a hotel—"Seward Hotel." Not "Seward Apartments." (4) In the room occupied by plaintiff and his wife, as in all its rooms, defendant kept a notice posted which in part read: "This *hotel* will not be responsible for money

or jewelry left in rooms. A safe for the convenience of our *guests* is in the front office." (5) On the envelope furnished by defendant and in which plaintiff enclosed the money he turned over to the clerk, the following was printed: "We assume no liability other than that provided for in the innkeeper's act of this State," from which it might well be inferred in accepting the parcel for safekeeping defendant acted as an innkeeper. (6) While at the Seward Hotel plaintiff and his wife occupied only one room, rather than an apartment or a suite of rooms. (7) In support of its claim of nonliability, defendant throughout has strenuously insisted that it was protected by the Michigan innkeeper's act, which obviously could not be except defendant assume the role of an innkeeper.

In view of the foregoing and other phases of the record, we conclude that the trial court was correct in holding that the relationship or status of these parties was that of innkeeper or hotel keeper and guest.

It hardly seems necessary to note that defendant was not a gratuitous bailee. The Michigan innkeeper's statute provides: "The liability of the keeper of any inn   *   *   *   for loss of or injury to personal property of his guest, shall be that of a depository for hire." 2 Comp. Laws 1929, § 8803 (Stat. Ann. § 18.311). Plaintiff paid defendant for the services tendered by the latter to the former, including use of defendant's safety depository. See *Baehr* v. *Downey,* 133 Mich. 163 (103 Am. St. Rep. 444, 14 Am. Neg. Rep. 84). And as bailee, defendant's duties and responsibilities were those imposed upon innkeepers by the common law, as conditionally modified by the statute. In *Fisher* v. *Bonneville Hotel Co.,* 55 Utah, 588 (188 Pac. 856, 12 A. L. R. 255), it is stated:

"Beale on Innkeepers, at § 185, states that in most jurisdictions the liability is analogous to that of common carriers. He then says: 'The rule as commonly stated in these jurisdictions is that the innkeeper is liable for the goods of the guest lost in the inn, unless the loss is the act of God or of a public enemy, or by fault of the owner.' "

But in this jurisdiction the common-law liability of innkeepers has been conditionally restricted, and thereby such liability has been, conditionally rendered less burdensome. The pertinent portion of the Michigan act is set forth in the footnote* hereto. Concerning the Michigan statute we have said: "Our statute limiting the liability of an innkeeper is in derogation of the common law, and must be strictly construed." *Davis* v. *Cohen,* 253 Mich. 330. In part the title to the Michigan statute reads:

"An act to define the duties and liabilities of hotel keepers and innkeepers with relation to the personal

---

* SEC. 2. No innkeeper, whether individual, partnership or corporation, who constantly has in his inn a metal safe or suitable vault in good order, and fit for the custody of money, bank notes, jewelry, articles of gold and silver manufacture, precious stones, personal ornaments, railroad mileage books or tickets, negotiable or valuable papers and bullion, and who keeps on the doors of the sleeping rooms used by his guests suitable locks and bolts, and on the transoms and windows of said rooms suitable fastenings, and who keeps a copy of this section printed in distinct type constantly and conspicuously suspended in the office and in the ladies' parlor or sitting room, bar-room, wash-room and in five other conspicuous places in said inn, or in not less than ten conspicuous places in all in said inn, shall be liable for the loss of or injury to any such property belonging to any guest, unless such guest has offered to deliver the same to such innkeeper for custody in such metal safe or vault, and such, innkeeper has refused or omitted to take it and deposit it in such safe or vault for custody, and to give such guest a receipt therefor: *Provided, however,* That the keeper of any inn shall not be obliged to receive from any one guest for deposit in such safe or vault any property hereinbefore described exceeding a total value of two hundred fifty dollars, except under special agreement as hereinbefore provided, and shall not be liable for any excess of such property whether received or not, but every innkeeper shall be liable for any loss of the above enumerated articles of a guest in his inn, caused by the theft or negligence of the innkeeper or any of his servants. (2 Comp. Laws 1929, § 8804 [Stat. Ann. § 18.312])

property of their guests, and to provide for the protection of inn and hotel keepers.''

Reference to the statute discloses that an innkeeper is not obligated to accept for safekeeping from a guest a bailment of a value in excess of $250 ''except under special agreement as hereinbefore provided,'' and that no innkeeper, unless he refuses to accept custody of the guest's valuables, shall be liable for a guest's loss of specified valuables if the innkeeper ''keeps a copy of this section [2] printed in distinct type constantly and conspicuously suspended * * * in not less than ten conspicuous places in all in said inn, . * * * *but every innkeeper shall be liable for any loss of the above enumerated articles of a guest in his inn, caused by the theft or negligence of the innkeeper or any of his servants.*''

Notwithstanding defendant relies upon the limitation of liability provided in the statute, in passing upon the issue here involved we must read the statute as a whole and apply it to the facts of the case. Doing so brings the conclusion that decision herein is controlled by the above italicized provisions in the statute. There is no controversy herein but that plaintiff delivered to defendant's clerk the envelope containing $3,500, that it was placed in defendant's safe and was not returned to plaintiff when demanded. In the absence of any other explanation the loss is presumed to have been caused by the theft or negligence of the innkeeper or his employees, and the innkeeper is liable to the guest. The burden of showing the absence of such theft or negligence incident to the loss is on the innkeeper.

''Under these circumstances, plaintiffs made out a prima facie case by showing the property in the defendants' possession, and refusal or neglect to return on demand. The *onus* of exoneration was then

upon the defendants. 3 Am. & Eng. Enc. Law (2d Ed.), 750. The rule as there stated is that, when the chattels are not returned at all, the law presumes negligence, and casts upon the bailee the *onus* of showing he was not negligent. This, undoubtedly, is the more modern and reasonable rule." (Citing cases). *Baehr* v. *Downey, supra.*

To the same effect see *Davis* v. *Cohen, supra.*

Defendant herein failed to establish its freedom from liability in the above respects and plaintiff is therefore entitled to recover. The circuit judge correctly so held.

Defendant also asserts nonliability on the ground that its clerk, in accepting from plaintiff the envelope and its contents, acted outside of the scope of his authority. This contention is based upon printed matter on the envelope which plaintiff signed. It reads:

"In accepting this envelope and contents for safe-keeping, we assume no liability other than that provided for in the innkeeper's act of this State, which has limited our liability so that in no event can we be liable for more than the amount specified in said act. The employee, accepting this envelope has no authority to accept same if the contents are valued at more than the amount specified in said act, namely, $250.

"The contents of this envelope do not exceed a value of $———.

"Signature of Depositor ———."

We think there are two reasons why defendant cannot successfully urge such defense.

(1) The record discloses that this limitation of authority was commonly disregarded by defendant's clerks and that such disregard of this limitation was known to the president of defendant corporation.

We are in accord with the circuit judge, who, in his opinion, stated:

"All of the defendant's clerks testify that it was not the practice to fill out the amounts taken in and the president of the company testifies that he 'was around the building.'   *   *   *   The president, Mr. Kowall, was around the building.   He had access to the safety deposit box including all these envelopes.   He was not enforcing this printed statement.
*   *   *

"While it is true that the statement that the clerk had no authority to accept the envelope was printed thereon, it is a fact that he did accept it and that the previous conduct of the defendant through its officer, the president, constituted a waiver of the instruction and now estops the defendant from claiming the benefit of the same."

(2) Further, defendant could not, by the printed matter on the envelope limiting the clerk's authority but which limitation was not adhered to by defendant, deprive the guests of the statutory provision: "But every innkeeper shall be liable for any loss of the above enumerated articles of a guest in his inn, caused by the theft or negligence of the innkeeper or any of his servants."   (2 Comp. Laws 1929, § 8804 [Stat. Ann. § 18.312])   Under the statutory provision just quoted defendant was legally obligated to reimburse plaintiff for the total amount of his loss.

The judgment entered in the circuit court is affirmed, with costs to appellee.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, DETHMERS, BUTZEL, and CARR, JJ., concurred.