ANN ARBOR TENANTS UNION v ANN ARBOR YMCA

Docket No. 201565. Submitted April 14, 1998, at Grand Rapids. Decided
    April 28, 1998, at 9:10 A.M. Leave to appeal sought.

   The Ann Arbor Tenants Union brought an action in the Washtenaw
   Circuit Court against the Ann Arbor YMCA and the city of Ann
   Arbor, seeking a declaration that the relationship between the YMCA
   and those to whom the YMCA rents rooms in its facility is one of
   landlord-tenant, not hotel-guest as claimed by the YMCA. The court,
   Donald E. Shelton, J., granted the plaintiff's motion for summary
   disposition, finding that the relationship is one of landlord-tenant
   and that it is subject to the statutes applicable to landlords and
   tenants. The YMCA appealed and the plaintiff cross appealed.

      The Court of Appeals *held*:

      The legal relationship between the YMCA and its occupants is one
   of hotel and guest and is governed by the statutes regarding hotels,
   inns, and public lodging houses. The statutes that apply to land-
   lords are not applicable to the YMCA. There is no relationship of
   landlord and tenant because all of the essential characteristics of
   such a relationship, especially that of exclusive possession and
   control in the occupant, do not exist. The court's order must be
   reversed.

      Reversed.

1. LANDLORD AND TENANT — INNKEEPERS.

   The legal relationship established by the renting of a room generally
   depends on the intention of the parties, gathered from the terms of
   the parties' contract and interpreted in light of the surrounding
   facts and circumstances; the character of the relationship is ordina-
   rily a question of law and fact.

2. LANDLORD AND TENANT — ELEMENTS OF RELATIONSHIP.

   All the necessary elements must exist in order for a landlord-tenant
   relationship to be created; the elements include permission or con-
   sent on the part of the landlord to occupancy by the tenant, subor-
   dination of the landlord's title and rights on the part of the tenant, a
   reversion in the landlord, the creation of an estate in the tenant,
   the transfer of possession and control of the premises to the ten-

ant, and, generally speaking, a contract, either express or implied, between the parties.

3. LANDLORD AND TENANT — INNKEEPERS — GUEST.

The fundamental criteria in distinguishing between a tenant and a guest is whether the person has exclusive possession and control of the premises; a tenant has exclusive legal possession and control of the premises against the owner for the term of the tenant's leasehold; a guest is a mere licensee and only has the use of the premises the guest occupies, subject to the proprietor's retention of control and right of access.

4. LANDLORD AND TENANT — ESSENTIAL CHARACTERISTICS.

Factors that may be considered in determining whether the essential characteristics of a landlord-tenant relationship exists with regard to a room-rental situation include: whether the place holds itself out to be a hotel and accords its occupants the status of guest, whether there is a guest register, whether the occupant has a permanent residence elsewhere, whether there is a written or oral lease, what rights and duties the lease spells out, whether the length of the stay is for an agreed-upon or definite duration, how long the stay is, the purpose of the stay, whether rent is paid daily, weekly, or monthly, what services are provided, whether the occupied premises include cooking or bathing facilities, what kind of furnishings are in the premises and to whom they belong, and whether the proprietor's employees retain keys and access to the room; the person's status is determined by considering all the circumstances; one's status as a guest generally is not affected by the fact that another pays for the guest's accommodations.

*Rose, Weber & Pappas* (by *Jonathan G. Weber* and *Jonathan I. Rose*), for the plaintiff.

*Butzel Long* (by *Robert B. Foster* and *John H. Dudley, Jr.*), for the Ann Arbor YMCA.

Before: GAGE, P.J., and FITZGERALD and SMOLENSKI, JJ.

SMOLENSKI, J. This case involves the question whether the legal relationship between the Ann Arbor YMCA and those to whom the YMCA rents rooms in its facility is one of landlord-tenant or one of hotel-guest. The trial court held that the relationship is one of

landlord-tenant and that the statutes that apply to landlords are applicable to the YMCA.[1] We hold that the legal relationship between the YMCA and its occupants is one of "hotel" and "guest" under Michigan law governing hotels, inns, and public lodging houses and that the trial court clearly erred in determining that a landlord-tenant relationship exists.[2] We further hold that the statutes that apply to landlords are inapplicable to the YMCA.

I

The Ann Arbor YMCA is a nonprofit, community-based membership organization that was founded in 1894, is affiliated with the national YMCA, and serves Washtenaw County. The Ann Arbor YMCA has four principal operations—fitness and recreation, child care and preschool, camping, and residence—all of which share the same building. The building has "common areas" on the first floor, including the front desk and main lobby, a lounge, a room that includes an eating area and vending machines, and public

---

[1] The trial court held that the YMCA is subject to the provisions of the Truth in Renting Act, MCL 554.631 et seq.; MSA 26.1138(31) et seq., the landlord-tenant relationship act, MCL 554.601 et seq.; MSA 26.1138(1) et seq., and the forcible entry and detainer act, also referred to as the antilockout statute, MCL 600.2918; MSA 27A.2918. The trial court specifically declined to determine whether the YMCA had violated the Consumer Protection Act, MCL 445.901 et seq.; MSA 19.418(1) et seq.

[2] A "hotel" is defined by statute as a "building or structure kept, used, maintained as, or held out to the public to be an inn, hotel, or public lodging house," and does not include bed and breakfast establishments. MCL 427.1(b); MSA 18.321(b). For the purposes of this opinion, our use of the term "hotel" will thus be broadly construed to include the terms "inn" and "lodging houses," although we recognize that various authorities may distinguish among them. Similarly, guests, lodgers, and roomers will be referred to collectively in this opinion as "guests."

restrooms. Consistent with its stated "mission"[3] to provide affordable living accommodations, the Ann Arbor YMCA for many years has had a residence section consisting of single-occupancy rooms for persons of low and moderate incomes. Many of the individuals who occupy the rooms suffer from various mental, emotional, or physical disorders and problems and are referred from human service agencies in the community. These agencies often pay for or guarantee payment for a room at the YMCA and provide various services for the individuals they refer. The YMCA also provides various kinds of assistance to the individuals, including counseling, finding employment, and obtaining additional resources from community organizations.

Each floor in the YMCA's residence section is similar to a dormitory, with communal bathroom facilities at one end of the hall containing several showers, sinks, urinals, and toilets to be used by the occupants of the floor. Each room is occupied by one person and is furnished by the YMCA with a single bed, a closet, a desk, and a chair. The YMCA provides each resident with linen services (sheets and towels), mandatory daily or weekly housekeeping service, and utilities. None of the rooms have bathroom facilities or facilities for maintaining food or preparing meals. The storage of personal belongings or food in the rooms

---

[3] In its 1995-96 annual catalogue, the Ann Arbor YMCA states its mission as follows:

"The Ann Arbor YMCA is a non-profit, independent, community-based membership organization that serves primarily youth, families and adults of Washtenaw County. It encourages fellowship, develops character and intellectual and physical skills, recreational activities and affordable living accommodations."

and the use of alcohol or illegal drugs is specifically prohibited. The rooms have no telephones. A house telephone is provided on each floor for incoming calls, and a pay phone is provided on each floor for outgoing calls. The YMCA provides a wake-up service by means of a buzzer in the rooms. Each resident is given a key to his room but is required to leave the room key at the front desk when leaving the building. The YMCA retains keys to each room and specifically reserves the right to enter the rooms for purposes of security, inspection, and maintenance. One floor of the residence section is reserved exclusively for women and the other floors are reserved exclusively for men. Visitation on a guest floor by a nonguest is prohibited as is visitation on an opposite-sex floor by a guest. Residents are permitted to see visitors in a lounge area on the first floor during scheduled hours.

Each person who desires to rent a room at the YMCA does so by registering for a room at the front desk of the YMCA.[4] Although the guest policy requires a security deposit for guests who pay by the month, apparently as a matter of practice no security deposits are collected. On admission, the individual signs a written agreement with the YMCA. The written agreement refers to each person who desires to rent a room as the "guest" and specifically states that the YMCA is a

---

[4] In its opinion, the trial court noted that the YMCA requires each prospective resident to fill out a two-part "residential application form." The first part is primarily identification data, including employment and personal references; the second part, which is entitled "extended stay," requires detailed information about the applicant's medical, criminal, and military background and provides space for approval of weekly and monthly rental rates. When a room becomes available, an interview is conducted with the applicant covering the applicant's source of income, the desired length of stay, whether the applicant has an assigned social services case, and the rules and regulations of the YMCA.

"hotel" as defined in MCL 427.1 *et seq.*; MSA 18.321 *et seq.*[5] The agreement and its accompanying "guest policy" state that the guest's right to occupy a room shall always be on a day-to-day basis, but that reduced weekly or monthly rates may be obtained.[6] Payment is required in advance; however, the YMCA issues to a guest a pro-rata refund for any period for which payment has been made in advance but was not used because the guest vacated the room. In the agreement each guest also acknowledges that "he or she is not a tenant but a licensee on a day-to-day basis, and that Guest has no property or possessory interest in the room being rented to Guest." The agreement and policy further provide that the YMCA has the right to terminate a guest's occupancy and ask the guest to leave at any time and without any reason and that if the guest does not do so voluntarily within twenty-four hours upon request, the YMCA may lock the guest out of the room without further notice.

In 1988, the city of Ann Arbor determined that additional low-income, single-room-occupancy housing was needed in the community. Accordingly, the city of Ann Arbor and the YMCA entered into an agreement whereby the YMCA agreed to add sixty-three additional single-occupancy rooms and to refurbish the existing thirty-seven rooms (for a total of one hundred rooms) and the city agreed to guaranty a construction loan to the YMCA for the project. The sixty-three rooms would be added by constructing three new floors on top of

---

[5]  See n 2, *supra.*

[6]  As of January 17, 1996, fifty-eight of the one hundred rooms at the YMCA were being rented at a weekly rate and thirty-six rooms were being rented at a monthly rate. In an affidavit dated August 28, 1995, the YMCA stated that the median length of stay for a guest is thirty-one days.

the YMCA's existing residential wing. The city and the YMCA agreed that the YMCA would operate the project in accordance with the YMCA's then-existing guidelines for its thirty-seven rooms, "as a single room occupancy residence for persons whose income is insufficient to allow them otherwise to afford safe and sanitary housing within the City of Ann Arbor." The project was completed in early 1991, but by May 1993 the YMCA defaulted on its construction loan, apparently because of insufficient revenues from the room rentals. Ultimately, the city paid the defaulted loan, and the YMCA and the city entered into a new management agreement in April 1995 regarding the YMCA's operation of the one hundred rooms. The 1995 agreement provided that the YMCA would continue to manage and operate the residence program "in accordance with its program guidelines, rules and regulations." The agreement provided that the YMCA would "continue to use its best efforts to refer residents to appropriate social agencies, including, but not limited to, mental health services, job skill and job placement services and *assistance in finding permanent affordable housing*." (Emphasis added.) In a provision entitled "Rental Rate Limitation," the agreement stated:

> The Y shall make available for rent on a monthly basis not less than eighty (80) of the units in the Residence Program at a rate not to exceed seventy-five (75%) percent of the fair market rent for an efficiency unit (zero bedrooms) established from time to time for the City by the U.S. Department of Housing and Urban Development (HUD). The above rental rate limitation shall not apply to twenty (20) of the units, and may only be increased beyond the above HUD guidelines with respect to the remaining eighty (80) units with the permission of the City. The Y may establish differentiated rental rates on a daily and weekly basis and if so,

must establish reasonable policies regarding a resident's right to the appropriate rental rate.

The Ann Arbor Tenants Union sought a judicial declaration that the relationship of the YMCA to its residents is one of landlord and tenant and that the YMCA is therefore subject to the several statutes governing that relationship. The YMCA argued that the nature of its facility containing single-occupancy rooms is that of a hotel or public lodging house offering transitional shelter to its "guests" and that it is not subject to the statutes applicable to landlords and tenants. The distinction between a guest and a tenant is significant whereby a guest is not entitled to notice of termination and can be the subject of self-help eviction, including a lockout, by the proprietor, while a tenant has protection against such measures. See MCL 600.2918; MSA 27A.2918, and see, generally, 2 Powell on Real Property, § 16.02[3][ii], p 16-29; 40 Am Jur 2d, Hotels, Motels, and Restaurants, § 68, p 946; 49 Am Jur 2d, Landlord and Tenant, § 2, pp 49-50 and §§ 231-238, pp 224-230; 52A CJS, Landlord and Tenant, § 752, p 79. See also *Poroznoff v Alberti*, 161 NJ Super 414, 419-423; 391 A2d 984 (1978), aff'd 168 NJ Super 140; 401 A2d 1124 (1979), and cases cited therein.

Following the parties' cross-motions for summary disposition, the trial court determined that the YMCA is not a "hotel" and its residents are not "guests." The trial court held that the legal relationship between the YMCA and its residents is one of landlord-tenant and that the YMCA is subject to the statutes that apply to landlords and tenants.[7] We disagree with the trial

---

[7] See n 1, *supra*.

court that the legal relationship of the YMCA and its residents is a landlord-tenant relationship and we hold that the relationship is one of hotel and guest.

II

In determining that a landlord-tenant relationship exists between the YMCA and its residents, the trial court was guided in large part by its examination of the 1995 agreement between the YMCA and the city of Ann Arbor, the YMCA's agreement and guest policy with its residents, and the relationship between the YMCA and its occupants. The court concluded that under the 1995 agreement with the city, the YMCA was obligated to provide *rental housing* for low and moderate income residents and that at least eighty percent of such housing must be provided on a monthly basis. The court further concluded that the YMCA operated in such a manner, rather than as a transient overnight or short-stay facility. We conclude that the trial court's determinations were erroneous.[8]

The legal relationship established by the renting of a room generally depends on the intention of the parties, gathered from the terms of the parties' contract and interpreted in light of surrounding facts and circumstances. 40 Am Jur 2d, Hotels, Motels, and Restaurants, § 14, p 910; 49 Am Jur 2d, Landlord and Tenant, § 21, p 64; Powell, § 16.02[3][ii], p 16-29; 1 Restatement Property, 2d, Landlord and Tenant, § 1.2, p 10. The character of the relationship is ordinarily a question of law and fact. *Id.*

---

[8] We note that our review of the trial court's declaratory relief is de novo on the record. *De Bruyn Produce Co v Romero*, 202 Mich App 92, 98; 508 NW2d 150 (1993). We will not reverse the trial court's findings of fact unless they are clearly erroneous.

Although the 1995 agreement between the city and the YMCA makes reference to the operation of a "residence program" and the provision of "housing," this does not operate as an admission that the YMCA is providing "rental housing" that gives rise to a landlord-tenant relationship. To be binding on the YMCA, such a statement must be made by a party or the party's attorney during the course of a trial and must be a distinct, formal admission solemnly made for the express purpose of dispensing with proof of a particular fact. *Macke Laundry Service Co v Overgaard,* 173 Mich App 250, 253; 433 NW2d 813 (1988). Even if it were an admission, an admission regarding a point of law is not binding on a court. *Id.* Elsewhere, the 1995 agreement specifically provides that the operation of the YMCA's units will be in accordance with the YMCA's existing guidelines, rules, and regulations for single-occupancy rooms and further provides that the YMCA will assist its residents in finding permanent housing. At the time of the agreement, as at the time of the proceedings in this case, the YMCA offered its rooms on a day-to-day basis, although discounted rates could be obtained for longer stays, and it did not offer permanent rental housing. That the purpose of the agreement is to provide short-term or transitional accommodations is evidenced by the inclusion in the agreement of the provision that the YMCA will assist its residents in finding permanent housing.

We agree with the YMCA that it is not obligated under the paragraph entitled "Rental Rate Limitation" to provide at least eighty percent of its units as monthly rentals. Reading the eighty-room-requirement in context and guided by the stated intentions of the parties who signed the 1995 agreement, we conclude

that the language in that paragraph refers to a limitation on the amount of rent that the YMCA may charge its occupants who stay a month, and does not serve to obligate the YMCA to provide monthly rental housing in at least eighty percent of its units. Affidavits submitted by the YMCA, which were unrebutted by the tenant's union, state that the purpose of the provision was to assure that those individuals who stayed at the YMCA for a month or longer would be charged a monthly room rate equivalent to seventy-five percent of the fair market rent level for a single-room occupancy unit as defined by HUD and was not intended to result in any change in the YMCA's traditional rental practices and procedures. The YMCA attested that it has never rented eighty percent of its rooms on a monthly basis. The city of Ann Arbor additionally attested that the eighty-room requirement originally was the basis for the rent structure for the rooms at the YMCA, but further attested that the rationale was no longer of any effect.

Finding nothing in the 1995 agreement between the YMCA and the city to dictate a result here, we now must determine whether the requisite elements of a landlord-tenant relationship are otherwise present in this case.

III

In *Grant v Detroit Ass'n of Women's Clubs*, 443 Mich 596, 605, n 6; 505 NW2d 254 (1993), the Michigan Supreme Court set forth the essential characteristics for a landlord-tenant relationship:

It is generally held that, in order that the relation of landlord and tenant may exist, there must be present *all* the necessary elements of the relation, which include permis-

sion or consent on the part of the landlord to occupancy by the tenant, subordination of the landlord's title and rights on the part of the tenant, a reversion in the landlord, the creation of an estate in the tenant, the transfer of possession and control of the premises to him, and, generally speaking, a contract, either express or implied, between the parties. [Emphasis added.]

See 51C CJS, Landlord and Tenant, § 1, p 32.[9]

The essential characteristics of a landlord-tenant relationship are not present in the relationship between the YMCA and its guests. The contract between the YMCA and its guests does not contain language evidencing an intent to form a landlord-tenant relationship. It is uncontested that the YMCA consents to the occupancy of its rooms; however, the consent is highly qualified and is limited to a guest's right to occupy a room on a day-to-day basis. Although there may be an agreed-upon duration of a guest's stay, it is a conditional agreement, with the YMCA specifically reserving the right to ask a guest to leave a room at any time. Also, the guest is free to leave at any time and is refunded any unused portion of payment that has been made in advance. In contrast, in a lease situation, a tenant's abandonment of the premises before the end of the term does not extinguish the tenant's obligation to pay the rent for the duration of the con-

---

[9] We note that the landlord-tenant relationship act, which generally regulates security deposits, defines "tenant" as any "person who occupies a rental unit for residential purposes with the landlord's consent for an agreed upon consideration." MCL 554.601(d); MSA 26.1138(1)(d). The definition is quite broad and would arguably apply here to regulate security deposits *if* the YMCA required them. However, the YMCA apparently does not require security deposits of its occupants. Therefore, in determining whether a landlord-tenant relationship is present in this case, we are guided by various authorities that have set forth and examined the fundamental characteristics of such a relationship.

tracted-for stay and the tenant is liable for rent that accrues until the premises are rerented or the term expires. 2 Cameron, Michigan Real Property Law (ICLE, 1993), Landlord and Tenant, §§ 20.57, 20.58, p 929. Further, in the contract between the instant parties, the YMCA expressly *retains*, rather than subordinates, its rights. As in *De Bruyn Produce Co v Romero*, 202 Mich App 92, 101; 508 NW2d 150 (1993), there is no language conveying a possessory interest in specific, designated property or providing for an occupant's exclusive use and possession of any property. Rather, the guest explicitly acknowledges that "he or she is not a tenant but a licensee on a day-to-day basis, and that Guest has no property or possessory interest in the room being rented to Guest."

It is this latter characteristic of exclusive possession and control of the premises—one that lies in the character of the possession—that is the fundamental criteria in distinguishing between a tenant and a guest. 49 Am Jur 2d, Landlord and Tenant, §§ 21, 22, pp 64-65; Powell, § 16.02[3][ii], pp 16-28 to 16-29; Restatement, § 1.2, p 10 and Reporter's Note, pp 12-13. See *Buck v Del City Apartments, Inc*, 431 P2d 360, 363 (Okla, 1967). A tenant has exclusive legal possession and control of the premises against the owner for the term of his leasehold, whereas a guest is a mere licensee and only has a right to use of the premises he occupies, subject to the proprietor's retention of control and right of access. *Buck, supra; Poroznoff, supra*, 161 NJ Super 419-421; *Green v Watson*, 224 Cal App 2d 184; 36 Cal Rptr 362 (1964); 49 Am Jur 2d, Landlord and Tenant, §§ 21, 22, pp 64-65. In *Grant, supra* at 608, where the Michigan Supreme Court found that a tenancy existed, the Court specifi-

cally determined that there had been a transfer of possession and control by the defendant landlord to the plaintiff and that the plaintiff's occupation of the apartment was exclusive of the defendant. Here, although an occupant of the YMCA must be assigned a room for the occupant's exclusive use, the occupant's right to occupy it is subject to the YMCA's retention of control and right of access to the room, i.e., control over visitation in the room, control over storage of food and personal belongings in the room, retention of keys to the room, and retention of right of access to the room for such purposes as housekeeping and maintenance. See 40 Am Jur 2d, Hotels, Motels, and Restaurants, § 61. In the instant case, the residents of the YMCA simply do not have the requisite exclusive possession and control of their premises during the period of their occupancy to give rise to a tenancy.

Our decision is buttressed by several cases that have examined room-rental situations to determine whether the essential characteristics of a landlord-tenant relationship are present.[10] In making that determination, these cases have examined various

---

[10] In addition to the cases discussed in the text of our decision, see *Francis v Trinidad Motel*, 261 NJ Super 252; 618 A2d 873 (1993) (individual who stayed in a hotel room for over two months, where he paid rent on a weekly basis and claimed it as his sole residence, was a "guest" and not a "tenant"); *Bourque v Morris*, 190 Conn 364; 460 A2d 1251 (1983) (no landlord-tenant relationship where person stayed in a hotel room that had no toilet, cooking, or bathing facilities, even though person stayed for three months and rent was paid on weekly basis by city because the person was a welfare recipient); *Buck, supra* (occupant who had no other residence, who stayed for 1-1/2 months, and who paid on a weekly basis was a guest where the place held itself out as a motel, there was a registration area, accommodations were on a daily basis, and maid service was available); *Sawyer v Congress Square Hotel Co*, 170 A2d 645 (Me, 1961) (where furnishings were the property of the hotel, the hotel provided linens, cleaning service, heat, and electricity, and the hotel employees retained keys and access to a room, there was a hotel-guest relationship

factors, including: whether the place holds itself out to be a "hotel" and accords its occupants the status of "guest"; whether there is a guest register; whether the occupant has a permanent residence elsewhere; whether there is a lease, either written or oral, and what rights and duties it spells out; whether the length of the stay is for an agreed-upon or definite duration, how long the stay is, and what the purpose of the stay is; whether rent is paid daily, weekly, or monthly; what services are provided, such as linens, housekeeping, heat, and electricity; whether the occupied premises include cooking or bathing facilities; what kind of furnishings are in the premises and to whom they belong; and whether the proprietor's employees retain keys and access to the room. One's status as a guest is generally not affected by the fact that another pays for his accommodations. 40 Am Jur 2d, Hotels, Motels, and Restaurants, § 24, p 917. See, e.g., *Bourque v Morris*, 190 Conn 364; 460 A2d 1251 (1983).[11]

---

despite the fact that stay was a long one and that payment for a room was made on a weekly or monthly basis).

[11] In *Universal Motor Lodges, Inc v Seignious*, 146 Misc 2d 395; 550 NYS2d 800 (NY Just Ct, 1990), the court found a month-to-month tenancy where a "homeless person" had resided for over two years in a motel room that was paid for by the Department of Social Services and where accommodations were provided only to homeless public assistance recipients and not to the general public. In finding that the person was not a "transient," the court in *Seignious* was guided by various statutes in New York that define a transient as someone who resides for a period of ninety days or less. *Id.* at 395-397. See also *Mann v 125 E 50th St Corp*, 124 Misc 2d 115; 475 NYS 2d 777 (NY City Civ Ct, 1984), where under New York statute a tenant includes a resident, other than a transient, of a hotel who stays for thirty days or longer. Michigan does not have comparable statutes that define "tenant" by the length of a person's stay. Moreover, although social service agencies do guarantee payment for many of the residents at the YMCA in the present case, we are unaware of any residents who have stayed there for over two years. Further, the YMCA's accommo-

Although the trial court in the instant case seemingly placed great weight on the fact that many of the YMCA's residents have a week-to-week or month-to-month duration of stay, the fact that a person who has been received as a guest remains for a considerable time or makes a special contract for the accommodations at a fixed rate per week or per month does not necessarily operate to terminate the relationship of hotel and guest. 40 Am Jur 2d, Hotels, Motels, and Restaurants, § 26, pp 918-919; *Layton v Seward Corp*, 320 Mich 418; 31 NW2d 678 (1948), *Buck, supra*, 431 P2d 364. The length of a person's stay and the rate or method of payment are merely evidentiary and not controlling. 40 Am Jur 2d, Hotels, Motels, and Restaurants, §§ 22, 23.

Michigan has relatively few reported cases where the issue at hand has been examined. In *Layton, supra* at 420-421, the plaintiff, who was a jockey, and his wife occupied a room at the Seward Hotel in Detroit for four months during the riding season and paid rent by the month. The Michigan Supreme Court noted the following circumstances as criteria in the determination whether the plaintiff was a guest or a tenant of the hotel: there was no lease or definite term of tenancy, the place held itself out as a hotel and its occupants as guests, and only one room was occupied rather than a suite of rooms. *Id.* at 424. The Court concluded that the plaintiff was a guest of the hotel. *Id.* at 425. In reaching that conclusion, the Court noted that one's status as a guest is determined by a consideration of *all* the circumstances and the

---

dations *are* held out to the general public. The circumstances attendant to the New York cases are unlike those in the instant case.

fact that payment for accommodations is made at a fixed rate per week or month is only one of the considerations. *Id.* at 424. See also *Brams v Briggs*, 272 Mich 38, 43; 260 NW 785 (1935) (a person is a lodger as opposed to a tenant where, although the person's stay is of a permanent nature and at a fixed rate, the person merely has use of his room, and the hotel management retains general control over the room and provides maid service).

In a case specifically involving a YMCA, the district court of New Jersey held that the relationship between a YMCA and its residents is that of hotel and guest. *Poroznoff, supra*, 161 NJ Super 419-423. The court determined that where a YMCA, among other things, holds itself out as a place where sleeping accommodations are available to transient or permanent guests, maintains a contract or understanding with its residents that the relationship is one of an innkeeper and guest, and is intended to be occupied as a hotel, then it is a "hotel" and its occupants are "guests." *Id.* at 417-421. The court noted the traditional distinction, "held in the majority of other jurisdictions," between a "guest" and a "tenant"—the distinction being the right of a tenant to exclusive legal possession and control and the right of a guest to mere use of the premises. *Id.* at 419-421. The district court held, and the superior appellate court affirmed, that a week-to-week resident of the YMCA did not have the requisite possession and control of his room and was therefore not a tenant, despite the fact that the room was his only residence. *Id.* at 419-423; 168 NJ Super 141-142. Accordingly, the YMCA was not required to submit to statutory landlord-tenant procedures in evicting its residents. *Id.*

We believe that the holding in *Poroznoff, supra,* is equally applicable in the instant case. Most of the factors in this case are indicative of a hotel-guest relationship, not one of landlord and tenant. The facts indicate that the YMCA does hold itself out as a "hotel" pursuant to MCL 427.1; MSA 18.321, accords its residents the status of "guest," and provides accommodations on a daily basis, although longer stays may be arranged at a discounted rate. Although there may be an agreed-upon duration of a stay, the guest is free to leave at any time and is refunded the unused portion of any advance payment. In the guest agreement, the YMCA specifically reserves the right to terminate a guest's occupancy at any time and without any reason. The YMCA provides the furnishings in a room and provides traditional hotel amenities such as linens and housekeeping service. The rooms are not equipped with cooking or bathing facilities. The residents are prohibited from storing food or personal belongings in their rooms and specifically acknowledge that they have no possessory interest in their rooms. Visitation on the residents' floor and in the rooms is restricted by the YMCA. The residents are required to leave their room keys at the front desk when they leave the building, and the YMCA retains keys and access to the rooms. Upon examining the relationship between the parties, we conclude that the above factors provide compelling evidence that a hotel-guest, rather than a landlord-tenant, relationship exists between the parties.

IV

We therefore hold that despite the fact that the instant YMCA increased the capacity of its accommoda-

tions at the behest of and as financially supported by the city of Ann Arbor to provide additional single-occupancy rooms for low-income people, despite the fact that many occupants of the YMCA may stay on a month-to-month basis and receive discounted rates, despite the fact that payments for some of the rooms may be made or guaranteed by social agencies on behalf of occupants, and despite the fact that for some of the occupants the YMCA is their only residence, there is no relationship of landlord and tenant between the YMCA and its occupants because all the essential characteristics of such a relationship—especially that of exclusive possession and control—do not exist. *Grant, supra; Layton, supra; Poroznoff, supra.* To hold otherwise would create an intolerable burden on the YMCA in its efforts to provide inexpensive temporary lodging for the very people it undertakes to serve, with a likely result being that those people would, in the end, be without accommodations. There being no landlord-tenant relationship, we also hold that the YMCA is not subject to those statutes that apply to landlords.

Because the remainder of the parties' issues are contingent on a determination by this Court that a landlord-tenant relationship exists in this case, we decline to address those issues.

Reversed.