**HIGDON**

v.

**SIGN OF THE CROSS HOUSING, INC.**

2003-Ohio-7350.]

Hamilton County Municipal Court, Ohio.

No. 02–CV–08500.

Decided July 9, 2003.

Legal Aid Society of Cincinnati and Noel M. Morgan, for plaintiff.

Ulmer & Berne, L.L.P., and Christopher D. Cathey, for defendant.

DAVID C. STOCKDALE, Judge.

{¶ 1} Sign of the Cross Housing, Inc. ("SOCH") is a not-for-profit Ohio Corporation that is exempt from federal income taxation under Section 501(c)(3) of the Internal Revenue Code. It is a Christian ministry dedicated to serving the housing needs of the poor through its operation of approximately 55 housing units in Cincinnati's inner city. SOCH uses a portion of its units for its Spirit Project Housing Program ("SPHP"). Persons entering the Spirit Project sign a program agreement whereby they are granted occupancy of a specific housing unit. The agreement provides that the person (referred to as a "participant") will remain for a one-month probationary period and, if the probation is successfully completed, "shall remain in the SPHP for a term not to exceed 180 days (6 months)." The participant usually is not required to pay a security deposit but is required to pay a "program fee," which is due the first day of each month. A $20 late fee is assessed after the seventh of the month, and the agreement provides that if any fees remain unpaid as of the 15th of the month, the participant will be asked to leave immediately. The agreement contains extensive regulations governing the participant's behavior and participation in this faith-based program.

{¶ 2} In late December 2001, plaintiff Dellarece Higdon determined that she would no longer be able to afford the apartment she was living in. After a friend told her about the availability of low-income housing through SOCH, the office manager of SOCH called her to see whether she might be interested in a one-bedroom apartment at 22 Findlay Street. This apartment was part of the Spirit

Project. Plaintiff toured the unit with the office manager and was told that she would have to pay a $230-per-month program fee for the unit. She did not have the money for the first month's payment and was told to go to the Cincinnati Free Store Food Bank for a rent voucher, which she did. She signed the program participation agreement January 3, 2002. The unit had appliances but no furniture. The plaintiff moved her furniture from her old apartment to the SOCH unit. She also called the Cincinnati Gas & Electric Company to have the utilities put in her name.

{¶ 3} The plaintiff's unit was located in an apartment building with a common entrance. About March 1, 2002, the lock on the common entrance door was changed by SOCH. SOCH posted a sign on the entrance door reading "Entry door locks have been changed. If your rent/fee is paid up, you can get a new key from the office. Sign of the Cross Housing Management." At that time, the plaintiff had not made her February payment. It was only after paying, or making arrangements to pay, her February payment that she secured another key. When the plaintiff was late with her March payment, SOCH changed the lock on her apartment and posted the following on the apartment door:

{¶ 4} "NOTICE

{¶ 5} "YOUR LOCK HAS BEEN CHANGED BY THE SPIRIT PROJECT STAFF, BECAUSE YOU HAVE VIOLATED YOUR CONTRACT AND ARE ABOUT TO BE TERMINATED FROM THE PROGRAM.

{¶ 6} "IF YOU DO NOT MAKE ARRANGEMENTS TO PAY THE BACK FEES AND TO COME INTO COMPLIANCE WITH THE RULES AND REGULATIONS OF THE SPIRIT PROJECT, YOU ARE TERMINATED FROM THE SPIRIT PROJECT.

{¶ 7} "YOU MAY PICK UP YOUR PERSONAL BELONGINGS BY AR-RANGING WITH THE OFFICE. DO NOT ATTEMPT TO ENTER YOUR FORMER ROOMS, AS THAT IS A CRIMINAL OFFENSE.

{¶ 8} "IF YOU DO NOT MAKE ARRANGEMENTS FOR YOUR BELONG-INGS, THEY WILL BE STORED FOR 30 DAYS IN OUR SECURE WARE-HOUSE. YOU MAY CALL 513-241-5535 FOR AN APPOINTMENT TO PICK UP YOUR THINGS. AFTER 30 DAYS YOUR BELONGINGS WILL BE GIVEN TO THE NEEDY.

{¶ 9} "TRY THE DROP IN CENTER FOR LODGING.

{¶ 10} "IT IS UNFORTUNATE YOUR FAILURE TO COMPLY HAS CAUSED THIS ACTION.

{¶ 11} "SPIRIT PROJECT STAFF"

{¶ 12} On March 29, 2002, the plaintiff brought the instant action seeking, inter alia, damages and attorney fees from the defendant and a declaratory judgment that the lockouts were in violation of R.C. 5321.15, which prohibits self-help evictions.[1] The court issued a temporary restraining order ("TRO") prohibiting the defendant from interfering with the plaintiff's access to the apartment. The plaintiff vacated the premises before the TRO expired on April 8, 2002. The defendant filed a counterclaim for damages for breach of contract and for a declaratory judgment that it is exempt in its operation of the Spirit Project from the Landlord–Tenant Act by virtue of R.C. 5321.01(C)(10).

{¶ 13} The Landlord–Tenant Act, R.C. Chapter 5321, governs the rental of residential premises. R.C. 5321.01(C) defines the term "residential premises" as "a dwelling unit for residential use and occupancy and the structure of which it is a part." However, it further provides that " 'residential premises' does not include any of the following: * * * (10) Emergency shelters operated by organizations exempt from federal income taxation under section 501(c)(3) of the 'Internal Revenue Code of 1986,' 100 Stat.2085, 26 U.S.C.A. 501, as amended, for persons whose circumstances indicate a transient occupancy, including homeless people, victims of domestic violence, and juvenile runaways." The central issue in this case is whether the unit provided to the plaintiff as part of the defendant's Spirit Project constitutes an "emergency" shelter "for persons whose circumstances indicate a transient occupancy." If it is such an emergency shelter, then it is not a "residential premises" as defined in the Landlord–Tenant Act. And if it is not a "residential premises," the prohibition in R.C. 5321.15 does not apply to the defendant's efforts to exclude the plaintiff from the premises.

{¶ 14} From the evidence presented at trial, the court concludes that the Spirit Project is not a program to provide shelter on an emergency basis to persons whose circumstances indicate that their occupancy will be transient. There is no statutory definition of the term "transient occupancy." The dictionary definition of the word "transient" is "passing through or by a place with only a brief stay or sojourn." [2] R.C. 5321.01(C)(3) exempts other facilities from the definition of "residential premises" where circumstances indicate a transient occupancy, such as tourist homes, hotels, motels, recreational vehicle parks, and recreation camps. The common understanding of the length of occupancy in such

---

1. R.C. 5321.15(A) provides that "[no] landlord of residential premises shall initiate any act, including termination of utilities or services, exclusion from the premises, or threat of any unlawful act, against a tenant, or a tenant whose right to possession has terminated, for the purpose of recovering possession of residential premises, other than as provided in Chapters 1923., 5303., and 5321. of the Revised Code."

2. Webster's New Collegiate Dictionary (1980) 1231. See R.C. 1.42 ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.").

facilities is that it is measured in days or weeks. As the context does not indicate that the legislature intended the term to mean something different in subsection (C)(3) from what it means in subsection (C)(10), it must be presumed that "transient occupancy" in subsection (C)(10) means a similarly short period of occupancy.[3] The expected occupancy in the Spirit Project is much longer than a few days or weeks. Indeed, for the program to accomplish its goals of stabilizing its participants' lives and helping them to achieve self-sufficiency, its duration must be longer. Thus, it starts with a month-long probationary period, followed by up to 180 days (and sometimes more) of regular occupancy. The fact that the plaintiff was required to put the utilities in her own name and the fact that she had to provide her own furnishings also demonstrate the non-transient nature of the expected occupancy.

{¶ 15} Similarly, the evidence does not establish that SOCH provides shelter in the Spirit Project on an emergency basis. In the plaintiff's case, there was no emergency. She was not homeless. She was not being put out of her previous apartment. She had arrived at a point where she could not afford to continue living in that apartment and had begun searching for less expensive housing when the defendant contacted her. In R.C. 5321.01(C)(10), the legislature used three examples of persons for whom exempt emergency shelters might be operated and whose circumstances would indicate transient occupancy: homeless people, victims of domestic violence, and juvenile runaways. Victims of domestic violence and juvenile runaways generally present with desperate circumstances. They are not only without shelter but often are without adequate clothing, food, or the means to obtain either. Employing the principles of statutory construction, we must conclude that the use of "homeless people" as an example along with victims of domestic violence and juvenile runaways was meant to convey a description of persons in similar dire straits in need of the same temporary emergency shelter.[4] The defendant has a waiting list of 20 persons for the Spirit Project; it has little furniture it can provide residents; and while it can refer residents to other agencies for food or clothing, there is no evidence it has kitchen or tableware, clothing, or other personal items for residents to use.

---

3. See *Henry v. Perry Twp.* (1891), 48 Ohio St. 671, 30 N.E. 1122 ("In the construction of a statute, it is, as a general rule, reasonable to presume that the same meaning is intended for the same expression in every part of the act." Paragraph one of the syllabus.).

4. See *Myers v. Seaberger* (1887), 45 Ohio St. 232, 236, 12 N.E. 796 ("[I]t is a settled rule of construction that, in accordance with the maxim noscitur a sociis, the meaning of a word may be ascertained by reference to the meaning of words associated with it; and again, according to a similar rule, the coupling of words together shows that they are to be understood in the same sense.").

In short, the Spirit Project does not have the characteristics of an emergency shelter program serving the immediate short-term needs of desperate people.

{¶ 16} Therefore, the court concludes that units in the defendant's Spirit Project do constitute "residential premises" as that term is used in the landlord-tenant act. It follows that the Spirit Project Housing Program Agreement is a "rental agreement," SOCH is a "landlord," and the plaintiff was a "tenant," all as defined in R.C. 5321.01.[5] By changing the locks on the doors in order to force the plaintiff to pay her program fee, which was rent, and later to evict her from the premises, the defendant violated R.C. 5321.15.

{¶ 17} The plaintiff presented no evidence of damages resulting from the lockouts other than her actual loss of occupancy for a period of four days. At the same time, the plaintiff failed to pay her rent for the month of March and reoccupied the unit from March 29 until early April under the terms of the temporary restraining order. The court finds that the damages incurred by each party are offsetting.

{¶ 18} The court will enter a declaratory judgment that Sign of the Cross Housing, Inc.'s operation of its Spirit Project Housing Program does not constitute the operation of an emergency shelter for homeless persons. Sign of the Cross Housing, Inc. was not and is not exempt from complying with the Ohio Landlord–Tenant Act in all respects, including the obligation to use appropriate judicial process to evict its tenants.

{¶ 19} The court hereby enters a declaratory judgment that Sign of the Cross Housing, Inc.'s operation of its housing units in March 2003, and its current operation of those units, do not constitute the operation of an emergency shelter for homeless persons. Sign of the Cross Housing, Inc. was not and is not exempt from complying with the Ohio Landlord–Tenant Act in all respects, including the obligation to use appropriate judicial process to evict its tenants. Sign of the Cross Housing's lockout of the plaintiff did violate R.C. 5321.15. Accordingly, the

---

5. {¶ a} R.C. 5321.01 provides as follows:

{¶ b} "As used in this chapter:

{¶ c} "(A) 'Tenant' means a person entitled under a rental agreement to the use and occupancy of residential premises to the exclusion of others.

{¶ d} "(B) 'Landlord' means the owner, lessor, or sublessor of residential premises, the agent of the owner, lessor, or sublessor, or any person authorized by the owner, lessor, or sublessor to manage the premises or to receive rent from a tenant under a rental agreement.

{¶ e} " * * *

{¶ f} "(D) 'Rental agreement' means any agreement or lease, written or oral, which establishes or modifies the terms, conditions, rules, or any other provisions concerning the use and occupancy of residential premises by one of the parties."

plaintiff is entitled to an award of attorney fees for which the court will entertain a motion. The defendant will pay the costs of these proceedings.

Judgment accordingly.