[Cite as *Parker v. Salvation Army*, 2012-Ohio-2069.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97582**

# JEFFREY PARKER

PLAINTIFF-APPELLANT

vs.

# THE SALVATION ARMY

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cleveland Municipal Court
Housing Division
Case No. 2008 CVG 22121

**BEFORE:** Celebrezze, P.J., Sweeney, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** May 10, 2012

**ATTORNEYS FOR APPELLANT**

Peter M. Iskin
Abigail C. Staudt
The Legal Aid Society of Cleveland
1223 West Sixth Street
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Alexander E. Goetsch
Sarah Blackburn
Megan R. Miller
Cavitch, Familo & Durkin Co., L.P.A.
1300 East Ninth Street
20th Floor
Cleveland, Ohio   44114

FRANK D. CELEBREZZE, JR., P.J.:

**{¶1}** Appellant, Jeffrey Parker, seeks review of the grant of summary judgment in favor of appellee, The Salvation Army, in Parker's suit for damages he claims resulted when he was removed from a homeless shelter using a lockout device. After a thorough review of the record and pertinent law, we affirm the decision of the trial court.

## I. Factual and Procedural History

**{¶2}** In 2008, Parker was required to move from a Salvation Army operated prison release program called Harbor Light after completion of his prison sentence on May 15, 2008. He opted to move into the Project Share Program operated by The Salvation Army because it offered a sober environment. This program provides participants with a room, access to various facilities within the Project Share building,[1] at least one meal per day, social services, and life coaching. In exchange, participants were required to pay a fee set by the type of room provided, generally $130 to $150 per month, regularly attend spiritual or substance abuse meetings, abide by a curfew for the first month of participation, show proof of income and employment or steps taken to gain employment, take steps toward saving enough money to transition to permanent housing, make no purchases over $100, and volunteer at the facility at least four hours per week.

---

[1] These include two lounges, laundry, vending machines, mail, bathroom, and showers.

{¶3} Upon his admittance into the program in May 2008, Parker executed three documents[2] setting forth his responsibilities and the temporary nature of the program. As set forth in the "Temporary Shelter Agreement" and "Project Share Probationary and Admission Contract," the program is designed to provide homeless men with a place to stay for up to nine months to obtain employment, save money to transition to permanent housing, and receive substance abuse assistance.

{¶4} Parker was initially placed in a room with a roommate, and they shared a private bathroom. Parker observed the rules of the program and attempted to gain full-time, permanent employment. However, Salvation Army Harbor Light Program Director of Housing Services George Woodworth stated that by July 2008, Parker had occasionally refused to sign in and out when entering or leaving the facility and eventually stopped altogether. Parker also stopped looking for work, moved from his shared room to an empty single room with a private half-bathroom without permission, removed a mirror from the common bathroom facilities and put it in his room, moved a shelf from the common storage area to his room, and Woodworth had received complaints about Parker from other participants. Parker was informed that if he did not find full-time employment by August 18, 2008, he would be required to leave.

{¶5} Woodworth stated that on September 2, 2008, he placed a notice on the door to Parker's room advising him to vacate by 2:00 p.m. that same day or he would be locked

---

[2] These were "The Salvation Army/Project Share Transitional Housing Client Intake Sheet," a "Temporary Shelter Arrangement," and a "Project Share Probationary and Admission Contract."

out. Woodworth stated he waited until the following day to install a lock on the door. Parker then went to the police and reported that he had been locked out of his home. He sought and received a temporary restraining order from the Cleveland Municipal Housing Court. Parker returned to the room until the restraining order expired on October 2, 2008. Parker also filed an action in the housing court seeking an injunction and damages.

{¶6} On May 29, 2008, Parker filed a motion for partial summary judgment, and The Salvation Army filed a motion for summary judgment. Parker sought judgment as to liability arguing that The Salvation Army breached its obligations as a landlord under Ohio's Landlord-Tenant Act. The Salvation Army argued that under the Landlord-Tenant Act, it was not a landlord, it did not have a rental agreement with Parker, and its facility did not qualify as a residential facility.

{¶7} The trial court, in a thorough, well-reasoned, and sound opinion, granted The Salvation Army's motion for summary judgment, finding among other things, that The Salvation Army Project Share program qualified as an exception to Ohio's Landlord-Tenant Act under R.C. 5321.01(C)(10).

{¶8} Appellant then perfected this appeal, assigning one error for our review:

> The trial court erred, as a matter of law, when it: (1) held that the R.C. 5321.01(C)(10) exclusion from the R.C. 5321.01(C) definition of residential premises applied to [Parker's] occupancy of a specified bedroom (together with common areas) at the Project Share building; (2) held that Parker was not a tenant, as defined in R.C. 5321.01(A), relative to this occupancy; and (3) thereupon denied Parker's motion for partial summary judgment on liability, granting [The Salvation Army's] motion for summary

judgment, and entered judgment for the Salvation Army on Parker's complaint, in the Judgment Entry, filed November 2, 2011.

## II. Law and Analysis

### A. Standard of Review

Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶9} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). In *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996), the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991). Under *Dresher*, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, *and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.*" (Emphasis sic.) *Id.* at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. *Id.* at 293. The nonmoving party must set forth

"specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. *Id.*

{¶10} This court reviews the lower court's granting of summary judgment de novo. *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 622 N.E.2d 1153 (4th Dist.1993). An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul*, 71 Ohio App.3d 46, 50, 593 N.E.2d 24 (8th Dist.1990).

### B. Landlord-Tenant Act

{¶11} In 1974, Ohio codified certain rights and responsibilities associated with the landlord-tenant relationship. The Landlord-Tenant Act, found in Chapter 5321 of the Ohio Revised Code, prohibits "self-help" remedies in residential leases that had previously been used by landlords and imposes liability for damages if such extra-judicial remedies are used. R.C. 5321.15. Included in these unavailable "self-help" remedies is the use of a lockout device to prevent a tenant from entering the leased premises rather than seeking a forcible entry and detainer action pursuant to R.C. 1923.04(A). R.C. 5321.15(A).

{¶12} However, the Landlord-Tenant Act does not apply to all lodging situations. The legislature included in R.C. 5321.01(C) a list of premises that are not subject to the act, including hotels, prisons, hospitals, and emergency shelters. Whether the Project

Share program qualifies as an emergency shelter facility exempt from the Landlord-Tenant Act under R.C. 5321.01(C)(10) is dispositive in this case.

a. Emergency Shelter Facility

{¶13} The Landlord-Tenant Act defines "residential premises" as "a dwelling unit for residential use and occupancy and the structure of which it is a part." R.C. 5321.01(C). However, it further provides that "residential premises" do not include "[e]mergency shelters operated by organizations exempt from federal income taxation under section 501(c)(3) of the 'Internal Revenue Code of 1986,' * * * for persons whose circumstances indicate a transient occupancy, including homeless people, victims of domestic violence, and juvenile runaways." R.C. 5321.01(C)(10).

{¶14} Parker argues that the Project Share program does not fit into this definition because he was not a "transient occupant" according to the common definition of that term and as interpreted by case law related to hotels and temporary guest lodging defined in R.C. 5321.01(C)(3).

{¶15} While R.C. 5321.01(C) does not define transient, the term is used in two subparts in this section, and Parker argues it should be given the same meaning under rules of statutory construction. *Henry v. Trustees of Perry Twp.*, 48 Ohio St. 671, 30 N.E. 1122 (1891).

{¶16} "Transient" has been given a precise legal meaning as it relates to hotels and other temporary lodging. Under R.C. 5321.01(C)(3), courts have examined the nature of the facility to determine whether it qualifies for exemption from the Landlord-Tenant Act.

In *Rocky River v. Ctr. Ridge Hotel Assoc.*, 61 Ohio App.3d 308, 572 N.E.2d 767 (8th Dist.1989), and *Asish Ents., Inc. v. Fairview Park*, 8th Dist. No. 75088, 2000 WL 23153 (Jan. 13, 2000), this court applied other sections of the Ohio Revised Code, which defined transient for purposes of the collection of certain hotel taxes and the regulation of hotels, specifically R.C. 5739.01(N) and 3731.01(A)(2). But because these cases and others rely on definitions in other code sections that are inapplicable to the present situation, they are of little use. Reliance on these code sections also makes interpretation of R.C. 5321.01(C)(3) of little use in defining "transient" for purposes of R.C. 5321.01(C)(10), despite the usual rule of statutory interpretation in *Henry*.

{¶17} Parker also finds support in *Higdon v. Sign of the Cross Hous., Inc.*, 126 Ohio Misc.2d 84, 2003-Ohio-7350, 803 N.E.2d 876 (M.C.). In that case, the Hamilton County Municipal Court examined a program that provided low-income individuals with reduced-cost housing. The program offered these individuals an unfurnished apartment in a 55-unit complex at a reduced rate for up to six months. These individuals were required to timely pay rent and put utilities in their names. The *Higdon* court found that the program did not constitute emergency shelter services, noting that Higdon was not homeless or in need of emergency housing. The court also found that the common understanding of "transient," as interpreted for the hotel exemption of R.C. 5321.01(C)(3), was a "length of occupancy in such facilities is that it is measured in days or weeks." *Id*. at ¶ 14. The court's decision was based on the fact that "the plaintiff was required to put the utilities in her own name and the fact that she had to provide her own

furnishings * * *." *Id*. The court found that "the Spirit Project does not have the characteristics of an emergency shelter program serving the immediate short-term needs of desperate people." *Id*. at ¶ 15.

{¶18} *Higdon* is distinguishable because the programs serve different purposes and individuals. The Project Share program provides greatly reduced-cost housing for homeless individuals in need of emergency assistance as a piece of a larger social service program. The program also provides meals, furnished rooms with utilities, mail service to a general address, life skills coaching, required substance abuse or religious meetings, tailored counseling sessions, and a safe and sober environment. The participants must also abide by various other program rules.

{¶19} Parker acknowledged that he was not promised a specific room or bed when he signed the agreements. He could be moved at any time, with little notice, and no control. He also could not exclude assigned roommates or Project Share staff from his room, whereas Higdon rented a specific apartment to the exclusion of others. *Higdon* does not dictate the result here.

{¶20} Parker forcefully argues that a period lasting as long as nine months is not "transient." But, "[t]he legal relationship established by the renting of a room generally depends on the intention of the parties, gathered from the terms of the parties' contract and interpreted in light of surrounding facts and circumstances." *Ann Arbor Tenants Union v. Ann Arbor YMCA,* 229 Mich.App. 431, 439, 581 N.W.2d 794 (1998), citing 40 American Jurisprudence 2d, Hotels, Motels, and Restaurants, Section 14, at 910; 49

American Jurisprudence 2d, Landlord and Tenant, Section 21, at 64; Powell, Section 16.02[3] [ii], at 16-29; 1 Restatement of the Law 2d, Property, Landlord and Tenant, Section 1.2, at 10.

{¶21} The trial court, in examining this question, took the approach that it was both the nature of the facility and the expectations of the parties that should dictate whether a given facility qualified under the exception in R.C. 5321.01(C)(10). This is evident from the language of this section.

{¶22} Examining the facility, the record is clear that it provides furnished rooms, including sheets, blankets, pillows, and towels, to individuals that lack housing. The rooms also do not have kitchens or other food preparation facilities usable by participants, and any such equipment is prohibited. Participants often have roommates and cannot dictate with whom they share a room. In order to stay there, the participants are required to progress toward specific goals set for them to ultimately be able to transition to permanent housing.

{¶23} Examining the relationship and expectations of the parties, the record is also clear that Parker was homeless when he moved into the facility. He understood that his stay was temporary and dependant on his active participation in the program. The agreements Parker signed clearly set forth that his stay was temporary and an emergency situation based upon his status as a homeless individual. He also acknowledged that he was not promised a specific room or bed when he signed the agreements. He could be

moved at any time, with little notice, and no control. He also could not exclude others from his room. *Accord Thomas v. Cohen*, 453 F.3d 657, 662-663 (6th Cir.2006).

{¶24} The relationship between the parties here is not like that of a landlord and tenant, but similar to a licensee provided with a place to sleep as part of a program to enhance a person's ability to cope with the vagaries of modern-day life. The Project Share Program requires individuals to abide by a lengthy set of rules. This is similar to the program in *Helping Out People Everywhere (HOPE) v. Deich*, 155 Misc.2d 707, 713, 589 N.Y.S.2d 744 (N.Y.City Ct.,1992). While the case is not exactly on point because *Deich* involved the revocation of a license to remain in a homeless facility so long as an individual abided by the program rules and a summary eviction proceeding in New York not available in Ohio, it is instructive. The New York court found,

> [i]t follows, that without the ability to summarily transfer a person out of a shelter when he/she fails to follow the rules and regulations set forth in the agreement, the shelter programs would have no way to enforce participation in the programs and to insure a safe, peaceful, and a healthy living environment conducive to the treatment and rehabilitation of each of the members of the shelter program.

{¶25} In the case before us, the trial court correctly found that "transient" in this context should not be limited by a set length of time, but the intent of the parties must be examined. The trial court's determination is also supported by public policy. Three such policy arguments have been identified by one commentator: (1) the financial impact on resource-strapped charitable organizations, (2) violence within the shelters from individuals who cannot be removed quickly, and (3) the impact on other residents. Hays, *Crusading for the Helpless or Biting the Hand That Feeds? Applying Landlord-Tenant*

*Law to Residents in Shelters*, 83 Notre Dame L.Rev. 443, 464-467 (2007). Hays concludes, "shelters must be able to maintain the highest standards, hopes, and expectations for their residents, which is only possible with the deterrent effect of swift removal. Thus, while state statutory law on the issue is unclear, public policy loudly warns against applying the landlord-tenant framework to shelters." *Id*. at 467. Given all this, the Project Share Program is exempt from the Landlord-Tenant Act.

{¶26} The Salvation Army also asserts that it is not a landlord under the act and that it had no lease with Parker. We need not address these issues because our above holding disposes of the case.

## III. Conclusion

**{¶27}** The Project Share Program operates an emergency shelter used for the temporary housing of homeless individuals as a part of a program to transition them to permanent, stable living accommodations. Therefore, the facility is excluded from the Landlord-Tenant Act. A lengthy stay of up to nine months does not mean the participants are not transient. Providing a homeless individual with a safe and secure location in order to obtain employment and save enough money to transition to permanent housing takes time and should not exclude the program from the exception under R.C. 5321.01(C)(10) when the intentions of the parties is so clear. The Salvation Army also has a need to exclude disruptive or dangerous individuals who may violate the safety and sanctity that the program attempts to create in the lives of men just beginning on a path fraught with pitfalls. The trial court correctly held that the Project Share facility qualifies under the emergency shelter exception to Ohio's Landlord-Tenant Act. Appellant's assignment of error is overruled.

**{¶28}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

JAMES J. SWEENEY, J., and
MARY EILEEN KILBANE, J., CONCUR